[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 407 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 408 
The jury have found that the deed from Houghton to Anthony, under which the defendant claims, was not delivered until after the recovery of the judgment in favor of the Merchants' Bank of Boston against Houghton, on the 10th of August, 1854; and in deciding this appeal it is to be taken as an established fact in the case that the land to which the controversy relates was bound by the lien of the judgment, when that conveyance was made. In 1860, when the defendant took his mortgage on the premises, the judgment was unsatisfied; nothing had been paid on it, and the Merchants' Bank, either being ignorant of Houghton's ownership of this property, or believing that the deed to Anthony had been delivered before the recovery of the judgment, had not taken any means to enforce it against the land. But the lien was perfect, and the bank could at any time have issued execution and sold the premises. The position of the defendant was this: he had, by virtue of his mortgage, a specific lien on the property, subject to the prior general lien of the judgment. It is plain that a title to the land, derived under a sale on the judgment, would extinguish the title under the deed *Page 410 
from Houghton and displace and destroy the lien of the defendant's mortgage.
The assignment of the judgment by the Merchants' Bank to Mrs. Carnes, in 1868, prima facie vested in her the same right to enforce it by a sale of the land in question, which existed in the Merchants' Bank when the assignment was made. The subsequent sale on the execution issued by Mrs. Carnes is not impeached for any omission to comply with the directions of the statute, and she acquired upon the delivery of the sheriff's deed the legal title to the premises, unless, for some reason not appearing upon the face of the proceedings, the sale was absolutely void. If the sale was warranted by the judgment and execution, the title passed to Mrs. Carnes on the consummation of the proceedings, although circumstances existed which would have authorized the court out of which the execution issued, in the exercise of its equitable jurisdiction to set aside the sale, or which would justify a court of equity in fastening a trust upon the title of the purchaser in favor of those whose interests were affected by the sale.
The answer sets out the title acquired by the defendant, under the foreclosure of his mortgage; the prior conveyance of the land by Houghton to Anthony, with warranty; that Houghton procured Mrs. Carnes to obtain the assignment of the judgment from the Merchants' Bank, and to hold it upon a secret trust for him, for the purpose and with the design of defrauding the defendant of the land, by subjecting it to sale under an execution on the judgment for his benefit; that Mrs. Carnes was privy to the fraud; that the execution was issued and the sale made at the instance and by the procurement of Houghton, and that he was the real assignee in interest of the judgment, and that Mrs. Carnes bid off the premises and took the sheriff's deed for his benefit, and concludes with a prayer for judgment, dismissing the complaint and setting aside the sale on execution and the sheriff's deed, and for general relief.
It is doubtless true that if the judgment had been assigned *Page 411 
by the Merchants' Bank directly to Houghton, it could not have been enforced by him against the land. The assignment of the debt to the debtor would, by operation of law, extinguish it, and a sale of the land under color of an execution, issued on the judgment after it had been assigned to the judgment debtor, would be a nullity. (Jackson v. Cadwell, 1 Cow., 622; Wood v.Colvin, 2 Hill, 566; Craft v. Merrill, 4 Ker., 456.) There is in this case a distinct and independent reason why Houghton could not enforce the judgment against the land, if he had become the assignee. He was bound in equity by reason of the covenants of warranty in his deed to Anthony, to relieve the land from the lien of the judgment, and he would not be permitted to disturb the title he had warranted, by selling the land upon a charge which he was bound to satisfy. (Bank of Utica v. Mersereau, 3 Barb. Ch., 528; Mickles v. Townsend, 18 N.Y., 575; Skinner
v. Starner, 24 Penn. St., 123.) And if Houghton had paid the judgment, and at the time had procured it to be assigned to a third person for his benefit, it would also in that case have been extinguished, and would no longer have justified a sale of the land. The introduction of a formal party as assignee, for the purpose of keeping the judgment alive, after payment by the judgment debtor, would be wholly ineffectual to accomplish the purpose intended. (Harbeck v. Vanderbilt, 20 N.Y., 395.)
The evidence offered on the trial does not sustain the averment in the answer that Houghton was the real assignee in interest of the judgment, nor does it warrant the assumption that Mrs. Carnes purchased and held it simply as his agent. That she made the purchase at the request and for the benefit of Houghton, the evidence on the part of the defendant tends to show, and it is obvious from the whole case that the assignment was procured with the design of selling the land in question on the judgment. But Mrs. Carnes paid the consideration for the assignment. She took it in her own name, and there is no evidence either that she advanced the purchase-money by way of gift to Houghton or that she did not rely upon the security of the judgment for her reimbursement. *Page 412 
Assuming that an action would lie in her favor against Houghton to recover the consideration paid for the assignment, as money paid and advanced by her at his request, the existence of the remedy is not inconsistent with a right on her part, as against Houghton, to enforce the judgment so long as her advances were unpaid. In the view of the transaction most favorable to Houghton his right, as against Mrs. Carnes, would be limited to a claim to have the judgment satisfied on paying her what she had expended, or if she had collected it, to the surplus, if any, or in case she had purchased the land, to be substituted to her title on reimbursing her the money paid for the judgment and the expenses of the sale. There was neither actual or constructive payment of the judgment by Houghton. Mrs. Carnes stood, in form and in fact, as the purchaser from the Merchants' Bank. Her title may have been affected by a trust in favor of Houghton, but she had a clear legal right, as against him or the defendant, to enforce the judgment by a sale of the land on execution. She therefore acquired the legal title as purchaser on the sheriff's sale; and the plaintiff, who by her death has become seized of an estate for life in the premises, as tenant by the curtesy, is entitled to recover in this action, unless some equitable defence was established to his claim for possession under the title of Mrs. Carnes. Conceding the fact to be, as is claimed by the defendant, that the judgment was purchased by Mrs. Carnes at Houghton's suggestion, and by arrangement with him for the purpose of enforcing it against the land in question, with knowledge on her part of Houghton's conveyance with warranty; and that the primary object in purchasing the judgment was to give Houghton the benefit of the sale, a case is presented which would seem to call upon a court of equity to grant relief to the defendant. The sale of the land under such circumstances by Mrs. Carnes on the execution was indirectly a sale by Houghton in contravention of his warranty, and I am not willing to deny the power of the court, under the circumstances, to reinstate the defendant in his title to the land in a proper proceeding, *Page 413 
upon such terms and conditions as should be deemed just and equitable. Whether the right has been lost by laches, on the part of the defendant, need not now be considered, but it is quite clear that the relief suggested cannot be granted in this action. The presence of other parties would be necessary before the court could proceed to grant affirmative relief against the title under the execution sale. The children of Mrs. Carnes, in whom the fee of the land has vested, subject to the life estate of the plaintiff, would be necessary parties to such a judgment. This is not seriously disputed by the learned counsel for the defendant, but it is claimed that it is sufficient to defeat the action of the plaintiff to show the fraudulent collusion between Mrs. Carnes and Houghton, in respect to the judgment and sale. In this position I cannot concur. It is, I think, an essential condition to the granting of equitable relief against the title of Mrs. Carnes, whether it is affirmative or restraining and negative merely, that the defendant should repay the sum expended by her in the purchase of the judgment. Until that is done, or offered to be done, the defendant cannot resist the claim to possession under the sheriff's deed. The rule seems to be well settled in equity, and numerous cases have proceeded upon it, that, in granting relief against trustees or agents, who have bought in on their own account, the estate of those they represent, or a charge upon it, in violation of their duty, a reconveyance or assignment will only be decreed on terms of repayment of the purchase-money, and other equitable claims, and this has been required where there was actual fraud on the part of the agent or trustee in procuring the title. (Baugh v.Price, 1 Wil., 320; Oliver v. Court, 8 Price, 127, 172;Carter v. Palmer, 11 Bligh, 397; Lewin on Trusts, 365; note to Fox v. Mackreth, 1 Lead. Cas. in Eq., 157, 168.)
The judgment, at the time Mrs. Carnes purchased it, was a valid and paramount lien on the land in controversy. The fraud in Mrs. Carnes did not consist in buying the judgment, but in the subsequent inequitable use which was made of it. Any person had the right to purchase *Page 414 
it on the best terms he could, and although it was purchased in consequence of information furnished by Houghton, that it was the first lien on the land, the defendant had thus far no ground of complaint. It was as much Houghton's duty to pay the judgment creditor, as to protect the land from the charge created by the judgment. The judge, on the trial, was requested to submit to the jury the question whether the assignment was procured by Houghton, and for his benefit, without any intention on the part of Mrs. Carnes to retain a lien or security on the judgment for the money advanced to obtain the assignment. This request was properly refused, as there was no evidence upon which a finding, in accordance with it, could be justified. The right of lien resulted from the transaction, and the evidence does not warrant the assumption that Mrs. Carnes did not intend to retain it.
The other exception, material to be noticed, arises in the refusal of the court to charge, that if the assignment was procured by Carnes, acting in collusion with Houghton, for the purpose of enforcing the judgment against the property in question, the defendant was entitled to a verdict. For the reasons already indicated, the ruling of the judge was correct.
On the whole case, I am of opinion that the judgment should be affirmed.
All concur.
Judgment affirmed.