no possible relation to, and could have had no possible effect upon, the header. The work which intestate was ordered to perform was not sufficient to drive the header apart. Ordinary experience, as well as direct testimony, indicates that the only way in which these parts could have been forced asunder was by the internal pressure of the steam, and that was not within the control of either of these workmen. The evidence would have amply justified the jury in finding that neither the intestate or his co-employé negligently did any act to bring about the catastrophe.

It is finally contended that intestate was employed by defendant for another purpose than calking pipes; that he was not called upon or authorized to go where he did, but was a mere volunteer, for whose misfortunes, under the circumstances, the defendant is not responsible. In opposition to this contention, the evidence shows that various employés were called upon to calk this header when it leaked, that intestate had been sent to do it once before, and that upon this occasion instructions were given to him to again perform this work by defendant's chief engineer or superintendent, who appears to have been fully empowered to give such orders. Under the circumstances, we think that defendant, through its representative, having sent the intestate to do this work, cannot successfully claim that it was free from any obligations to him as an employé while he was engaged in discharging his duty.

The case of Franck v. American Tartar Company (Sup.) 87 N. Y. Supp. 219, presents some features similar to those existing in the case at bar, and, to the extent thereof, is an authority in favor of the right of plaintiff to recover herein. The judgment and order should be reversed, and a new trial granted.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur, except STOVER, J., who dissents.

---

## In re SHAWMUT MIN. CO.

### Appeal of MILLER.

(Supreme Court, Appellate Division, Fourth Department. May 3, 1904.)

1. DEPOSITION—SUBPŒNA—NOTICE TO PARTIES.
    A defendant in an action in another state may not have a subpœna requiring him to appear and give his deposition set aside because notice was not given other defendants.

2. WITNESS—CONFIDENTIAL COMMUNICATIONS BY CLIENT TO ATTORNEY.
    An attorney may not be compelled to testify who were represented by him in the purchase of certain mines, this involving the disclosure of confidential communications made by clients with references to their purposes and plans, in the fulfillment of which he was employed and retained as an attorney; the party desiring to elicit the evidence not having dealt with the attorney as representing other people.

3. EVIDENCE—TO BE USED IN ANOTHER CASE.
    A party may not in one case elicit evidence which is not material or useful to him therein, merely for use in another case.
    Williams and Stover, JJ., dissenting.

Appeal from Special Term, Erie County.

Petition of the Shawmut Mining Company to obtain the testimony of George C. Miller as a witness in an action pending in the court of common pleas of Jefferson county, Pa. From certain orders said company and Miller appeal. Reversed in part.

This is an appeal by the appellant Miller from an order made at a Special Term of the Supreme Court, and entered in Erie county clerk's office August 10, 1903, denying his application to have set aside a subpœna requiring him to appear and answer upon the ground "that the rule and notice to take the deposition of the said George C. Miller upon which the said subpœna was issued had been theretofore executed, and was no longer of any force or effect." There is also an appeal by said Miller from that portion of an order made at a Special Term of the Supreme Court, dated September 25, 1903, directing him to answer certain questions which were propounded upon the examination under said subpœna, and a cross-appeal by the Shawmut Mining Company from so much of the latter order as denies its application to compel said Miller to answer various other questions in obedience to the commands of the subpœna issued as aforesaid.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

James McMitchell, for Shawmut Min. Co.
George C. Miller, in pro. per.

HISCOCK, J.   It will be helpful to a better appreciation of the discussion which follows if we state at the outset the conclusions arrived at by us upon the various appeals. We think that the order denying the application of Mr. Miller to entirely set aside the subpœna now outstanding should be affirmed, but that the last order, upon the one hand compelling him to answer certain questions disclosing whom he represented as clients in certain transactions, and upon the other denying the application of the Shawmut Mining Company to compel said Miller to comply with the provisions of said subpœna so far as "to answer any and all questions which may be propounded to him [you] material to the issues presented in such action, save only such as may require him [you] to disclose facts communicated to him [you] confidentially by his [your] clients," etc., should be reversed.

The important and interesting question upon these appeals is whether the appellant Mr. Miller can be compelled to disclose the identity of certain persons for whom, as clients, he was retained to conduct and consummate certain negotiations for the purchase of mining property, and a somewhat detailed statement of facts will be necessary in order to present a clear and intelligent idea of the exact nature of that and the other questions involved. On September 22, 1899, the Shawmut Mining Company made a contract with Reilly & Co., who were operating what was known as the "Brock Mines" in Pennsylvania, for the entire output of said mines. This agreement, as claimed, was extended from time to time to cover a period down to April 1, 1903. Upon the faith of this contract with Reilly & Co. the mining company, as claimed by it, entered into a subcontract with one Dennison to sell to him the output of said mines until April 1, 1903. Delivery of coal was made by Reilly & Co. under this contract until October 1, 1902, when it ceased, and the claim was made that said Brock mines had

been sold. In October, 1903, the Shawmut Mining Company commenced in Pennsylvania an action against Reilly & Co. By its.amended bill filed in said action the plaintiff brought in as defendants, in addition to the members of the firm of Reilly & Co. originally named, the witness Miller, one Fisk, who was the purported purchaser of the mines, and another, named Cartwright. By this bill it was, amongst other things, claimed that the sale of the mining property to Fisk was colorable, and made as the result of a conspiracy amongst the defendants to defeat the rights of the plaintiff, and that the transfer was made with full knowledge of plaintiff's rights; that said Fisk was merely a "straw man" in the transaction, representing other parties who actually furnished the money and took the property, and plaintiff prayed specific performance of its contract with Reilly & Co. for the output of said mine, and for such other relief as might be proper. Various defendants answered, denying plaintiff's claims, and especially that there was any conspiracy, or coloring, or fraud in the purchase and sale of the mines in question. After the action had been partly tried in Pennsylvania, proceedings were taken for the issuance of a subpœna in this state directed to the defendant Miller, and requiring him to answer questions material to the issues framed. He appeared in obedience to the subpœna, answering some and refusing to answer others which were put to him, and the proceedings were returned to the Pennsylvania court. Thereafter, as it is claimed, without further notice, there was issued a second subpœna, which is the one involved, and giving rise to all of the questions now before us.

The appeal by Mr. Miller from the order denying his motion to vacate this last subpœna involves the contention upon his part that the proceedings for his examination were complete upon the return of the evidence and proceedings taken and had under the first subpœna, and that it was irregular to issue a second one without notice to the various defendants. If, in fact, this last subpœna has been issued without out proper and requisite notice to those who were entitled thereto, such objection may properly be raised in the Pennsylvania courts either upon motion to suppress any evidence taken or by objection to its reception upon the trial. We do not feel inclined, upon the application of Mr. Miller to protect any alleged rights of other defendants who may be trusted to take care of themselves at the proper time, and our decision affirming the order denying his application is not intended in any manner to prejudice any proceeding which it may be determined to hereafter take in respect to the matters involved.

Proceeding upon this theory that the sale by Reilly & Co. of the Brock mines was colorable and fraudulent, and for the purpose of defeating enforcement by petitioner of their contract to deliver the coal therefrom, and that the purported purchaser, Fisk, simply represented other people, petitioner asserts its desire and right to ascertain what other people were actually interested in said purchase, and its examination of Mr. Miller largely proceeded upon the lines of attempting to obtain this information. In this way it led up to the questions which he refused to answer upon the ground that they involved the betrayal of confidential communications between him and clients, and the propriety of which is before us for review. As throwing some

light upon the solution of these questions, it is to be borne in mind that the answers of the various defendants emphatically and fully deny any colorable sale or conspiracy to defeat the rights of plaintiff, and Mr. Miller, in the evidence which he did give under the subpœna, fully and unqualifiedly testifies without any contradiction appearing before us upon this appeal that his connection with the matters involved was simply as attorney, and that whatever information he derived in regard to the identity of the persons interested in the purchase of the mine was the result of communications made by them to him as their attorney, and that none of the information sought by plaintiff was embodied in communications made public or in the presence of third persons. Under such circumstances a line of questions was put to him calling for a disclosure of the persons whom he represented in the purchase of the Brock mines; also whether one Dennison had any interest in the Brock mines or in the Iroquois Coal Company; also the names of the interests for whom he acted in the purchase of the Brock mines; also what interests, as attorney, he represented in the transactions involved; also anything which Mr. Cartwright, who was one of his clients, communicated in regard to Mr. Dennison's interest. As stated, the witness declined to answer any of these questions upon the ground that all of the information covered thereby which he possessed came to him confidentially in his relation of attorney. Upon the motion resulting in the last order appealed from, the court practically condensed all of the questions into the single one, "Who were represented by the said George C. Miller in the month of October, 1902, in connection with the purchase and sale of the Brock coal mines?" and to this required an answer to be made. Under all of the circumstances of this case we think that the witness is correct in his contention that he should not be compelled to answer such question and disclose the information sought thereby. Resolved into its constituent parts, the question would compel the witness to state that certain persons retained him as attorney, and that, desiring to become interested in the purchase or sale of said mines, they communicated to him that fact, and directed and employed him to carry out and accomplish their purpose. Is seems to us clear that such testimony given by him would involve the disclosure of confidential communications made by clients with reference to their purposes and plans, and in the fulfillment and prosecution of which he was employed and retained as an attorney, and that such disclosures would come within the prohibition of the statute as interpreted by the courts.

The petitioner urges various reasons why the attorney should be compelled to disclose the names and identity of his clients in this connection which might be applicable to other cases, but are not, we think, pertinent to this one. It is said that the court may always compel an attorney to name and identify his client in order that it may determine whether the relationship of attorney and client does in fact exist. Here, however, there is no necessity for any such inquiry for the very questions asked state and assume that the witness did represent certain people as clients. The inquiry is squarely and exclusively based upon this very assumption that he was, as an attorney, representing certain people in a certain transaction. Our attention is also called to

various cases, of which People v. Petersen, 60 App. Div. 118, 69 N. Y. Supp. 941; Martin v. Platt, 51 Hun, 429, 4 N. Y. Supp. 359, and Hampton v. Boylan, 46 Hun, 151, are illustrations, holding that an attorney may be compelled to testify to his representation of some person as an attorney. Those cases, however, are all based and decided upon the principle, in one form or another, that the client retained his attorney, and authorized him to do certain public acts or deal with third parties; that the communications were made for the purpose of enabling the attorney to perform acts which involved the rights of third parties, who acted upon the faith of his attorneyship; and that under such circumstances it was entirely proper that the fact of the attorneyship should be established. That, however, is not at all this case. Plaintiff has not dealt with the witness upon any such theory that he represented other people as now compels or justifies a disclosure of those persons. For the purpose of establishing its claims in a litigation which is hostile both to the witness and his clients it is desirous of establishing that certain persons were interested in a certain transaction so that they may be made liable as parties in respect thereto, and in the hope of establishing this liability it seeks to make the witness testify that he did represent them in respect to that transaction. Plaintiff wishes to prove simply the fact that they were connected with the purchase or sale of these mines. That is one of the issues which is in litigation. If they can compel the witness to state, as directed by the order appealed from, that he represented certain persons in the purchase or sale of these mines, they have made progress in establishing by such evidence their version of the litigation. As already suggested, such testimony by the witness would compel him to disclose not only that he was attorney for certain people, but that, as the result of communications made to him in the course of such employment as such attorney, he knew that they were interested in certain transactions. We feel sure that under such conditions no case has ever yet gone to the length of compelling an attorney, at the instance of a hostile litigant, to disclose not only his retainer, but the nature of the transactions to which it related, when such information could be made the basis of a suit against his client. Upon the other hand, we believe that a refusal to compel such disclosures is sustained by the principles laid down in Carnes v. Platt, 36 N. Y. Super. Ct. 361, 362, affirmed 59 N. Y. 405; Williams v. Fitch, 18 N. Y. 546, 551; Chirac v. Reinicker, 11 Wheat. 280, 6 L. Ed. 474.

There are other reasons which influence us to thus deny the right of petitioner to the information which it seeks upon this application. As already stated, this action was brought to compel specific performance by Reilly & Co. of a contract to deliver coal. The time within which said contract was to run has elapsed, and, so far as we can see, plaintiff's only relief in this action can be an incidental one for damages. Even if we should assume that the answers of the witness would disclose the names of parties who were interested in the purchase of the Brock mines, and that they were parties to a conspiracy by such purchase to defeat performance by Reilly & Co. of their contract with the plaintiff, we are unable to see how those facts could be material or useful to plaintiff in this action. It would hardly seem

that plaintiff so regards them. It does appear that Dennison & Co. have brought an action for damages against plaintiff because of its failure to deliver coal which it was to have obtained from the mines under its contract with the Reilly people, and that action is apparently now pending. In the brief of the learned counsel for the mining company, we find the following:

"This latter breach [by Reilly & Co. of their contract, which resulted in the failure of plaintiff to deliver the coal to Dennison & Co.] was brought about by the purchase of said mines by Fisk during the term of said contract, and this purchase the Shawmut Mining Company alleges was fraudulent, and made in pursuance of a willful and malicious conspiracy. * * * It is, of course, elementary that, if C. G. Dennison & Son were parties to this alleged fraudulent purchase, they cannot recover against the Shawmut Mining Company damages for a breach of contract which they themselves necessitated by precluding the possibility of its performance."

And again:

"He [the witness Miller] admits that Dennison was a client of his, but declines to state whether said Dennison had any interest, directly or indirectly, in the purchase of the mine, on the ground of his professional privilege."

One of the questions addressed to the witness under the subpœna specifically asked whether the latter represented Dennison in the purchase of the mine. We think all of these things make it reasonably plain that plaintiff is seeking information ostensibly in its suit against Reilly which is really to be used for purposes of defense in the suit brought by Dennison against it. If we are correct in this, no extended discussion is necessary to demonstrate that such purpose cannot legitimately or regularly be made the basis of the examination now being sought. Other avenues are open to petitioner through which it may seek the information upon which to base its defense if it has in fact been made the victim of a conspiracy or unlawful practice. As hereinbefore stated, we think it was improper for the court to refuse to plaintiff the general right under the subpœna to ask the witness Miller any questions which might be propounded material to the issues presented in the action, and which did not require him to disclose any confidential communications. It may be that the only questions which petitioner would desire to ask will be upon the line of those which we have decided to be improper. We have so far made known our views upon these that the parties will doubtless be helped in determining what may or may not be asked and answered. We do not, however, think that, in advance, the petitioner should be deprived of the right to ask questions upon the assumption that they will be of such a nature as to excuse answers thereto.

In accordance with these views, the order of August 10, 1903, should be affirmed, with $10 costs and disbursements, and the order dated September 25, 1903, should be reversed, without costs to either party as against the other. All concur, except WILLIAMS and STOVER, JJ., who dissent from reversal of so much of order dated September 25, 1903, as is appealed from by the appellant Miller.