*519 OPINION OF THE COURT
Harold L. Wood, J.
Before the court is an application by Grace D’Alessio, administratrix of the goods, chattels and credits of Vincent Fiorito, deceased, for preaction disclosure pursuant to CPLR 3102 (c). She desires to take the deposition of Michael Gilberg, Esq. and Arthur Dallas, former Police Chief of the Town of Mamaroneck, New York. This discovery is sought to assist her in bringing an action for the wrongful death and pain and suffering of her late father, Vincent Fiorito. Mr. Dallas has not opposed this application.
The precipitating event took place on Sunday, December 2, 1990 at 5:29 p.m. at the intersection of Palmer Avenue and Blossom Terrace, Mamaroneck, New York. At that time, per the police accident report, Mr. Fiorito was struck by an unknown vehicle while walking on Palmer Avenue. No eyewitnesses were reported. Mr. Fiorito, 68 years of age, suffered severe injuries. He apparently never regained consciousness and passed away on January 4, 1991.
The applicant desires to conduct depositions of the two individuals above named in order to determine the identity of the driver of the vehicle which struck Mr. Fiorito.
The affirmation of her attorney, Howard Rudnick, Esq., asserts that he had spoken with Mr. Gilberg who indicated that, if Mr. Rudnick would prevail upon the District Attorney’s office to recommend no jail time for his client, Mr. Gilberg would disclose his client’s name. The District Attorney’s office would not make such a promise and Mr. Gilberg stated that not only would he refuse to reveal the identity of his client, but that he would not concede that he even had a client who was involved in the incident.
Mr. Rudnick states that he phoned Mr. Gilberg after having spoken with former Chief of Police, Arthur Dallas, who indicated that David Gilberg, Esq., the father of Michael Gilberg, had intimated that he represented the driver involved in the incident. That David Gilberg had since moved to Florida and that his son was now handling the matter. David Gilberg had refused to divulge the identity of his client and stated that his client had thought that he "had hit a bird”.
The affidavit of Michael H. Gilberg, Esq. is quite different from that of Mr. Rudnick. Mr. Gilberg states that he did not have the conversation with Mr. Rudnick which was previously related. Mr. Gilberg denies ever having indicated that he *520 represented anyone involved in the incident. Mr. Gilberg’s affidavit quite carefully avoids advising the court as to whether or not he represents anyone who might have been involved in the incident. Although not stating that an attorney/client relationship exists between himself and any person who might have been involved in the incident, Mr. Gilberg, nonetheless, has argued that the name of a client falls within the attorney/client privilege of CPLR 4503 (a).
In CPLR 4503 (a), we find the codification of the common-law attorney/client privilege. It holds communications between attorneys and their clients to be confidential unless waived by the client. This rule of law acknowledges a policy recognized as long ago as the rein of Elizabeth I. A free and full disclosure between client and attorney is its purpose. (Matter of Jacqueline F., 47 NY2d 215.) It is meant to ensure that the seeker of legal advice will completely confide in his attorney, secure in the knowledge that confidences will not be made public to his embarrassment or legal detriment. (58 NY Jur 2d, Evidence and Witnesses, § 864, at 557; Matter of Priest v Hennessy, 51 NY2d 62; Hurlburt v Hurlburt, 128 NY 420.)
As with all privileges, the attorney/client privilege is contrary to the general requirement that persons be required to give testimony regarding information within their knowledge. (Matter of Jacqueline F., supra.) To that extent, the attorney/ client privilege has been characterized as an "obstacle” to the truth-finding process. It being noted that its implementation should be cautiously scrutinized. (Matter of Jacqueline F, supra; Matter of Field, 408 F Supp 1169; 5 Weinstein-Korn-Miller, NY Civ Prac ¶ 4503.19.)
The fulcrum of the privilege is the necessity for the existence of an attorney/client relationship. This relationship only comes into being if the party entitled to the privilege is a client of the attorney or seeks to become one. (People v Belge, 59 AD2d 307; 58 NY Jur 2d, Evidence and Witnesses, § 865.) It arises when a person contacts an attorney for the purpose of obtaining legal services or advice. (Matter of Priest v Hennessy, supra.) In order for the privilege to attach the client or would-be client must have consulted with the attorney in his capacity as an attorney, and not merely in the role of a friend or nonlegal advisor. (People v O’Connor, 85 AD2d 92.) Thus, the privilege will not apply where the attorney has supplied business advice (People v Beige, supra). Nor where the attorney has acted as a broker, agent or negotiator of commercial matters. (Matter of Levinsky, 23 AD2d 25; Avery v Lee, 117 *521 App Div 244; Matter of Howe v Stuart, 68 Misc 352; Phoebus v Webster, 40 Misc 528.) It is not necessary that an attorney have been formally retained in order for the privilege to apply. (Gage v Gage, 13 App Div 565.)
Where an attorney/client relationship has been established, may the court require the attorney to reveal the identity of his client? The general rule is that such information is not privileged and must be revealed. (McCormick, Evidence, at 215 [3d ed]; 58 NY Jur 2d, Evidence and Witnesses, § 873, at 570.) The rationale behind this general rule being that since the attorney/client privilege hinges upon a communication being made for the purpose of obtaining legal advice and, since the identity of a client is not relevant to the advice given, the client’s identity is not privileged. (Matter of Jacqueline F., supra; Matter of Kaplan [Blumenfeld], 8 NY2d 214; People ex rel. Vogelstein v Warden, 150 Misc 714.) It being the client’s communication rather than the client’s name which is confidential. (Scherz v Scherz, 110 Misc 2d 137.) It has also been argued that the client’s identity must be revealed in order to determine if an attorney/client relationship does in fact exist. (Matter of Jacqueline F, supra; People ex rel. Vogelstein v Warden, supra.)
Notwithstanding the above-cited cases, the law in New York State does not categorically establish that a client’s identity may never be the beneficiary of the protection afforded by the attorney/client privilege. As has been stated: "there is a distinct cleavage of opinion in this State * * * and many exceptions, some of them for situations where giving out the client’s name would serve no necessary purpose but on the contrary would make public the very fact as to which the client desired and was entitled to secrecy.” (Matter of Kaplan [Blumenfeld], supra, at 218.)
It seems clear that a client’s identity must be revealed within the context of pending litigation. (Matter of Jacqueline F, supra; Matter of Kaplan [Blumenfeld], supra; 99 Plaintiffs v Vanderbilt, 1 Abb Prac 193.) This has led to the conclusion that unless there are other circumstances, an attorney will not have to reveal a client’s identity where the client is not a party to pending litigation. (Matter of Jacqueline F., supra; Matter of Shawmut Min. Co., 94 App Div 156; Neugass v Terminal Cab Corp., 139 Misc 699.) Since Mr. Gilberg’s purported client is not a party to pending litigation, such reasoning would lead to the finding that Mr. Gilberg (were an attorney/client relationship found to exist and were appropri *522 ate circumstances found not to exist) could not be compelled to disclose his client’s identity. Therefore, this court finds that the determination to be made by this court requires a probing analysis.
The highest court of this State has itself engaged in the delicate balancing necessary to resolve this issue. In Matter of Jacqueline F. (supra), the whereabouts of a child were unknown. The child’s aunt had been granted guardianship of the child. Her letters of guardianship were revoked. In the meantime, she had left the State for Puerto Rico, leaving no forwarding address. The Court of Appeals held that the aunt’s attorney was required to reveal the whereabouts of his client. In doing so, it analyzed the historical and philosophical underpinnings of the attorney/client privilege with particular regard to the issue of disclosing a client’s identity. In its decision, the Court noted that determining whether a specific communication should be cloaked with the protection of the privilege depended " ' "on the circumstances of each case” ’ ”. (47 NY2d, at 222, quoting Matter of Kaplan [Blumenfeld], supra, at 219, quoting 8 Wigmore, Evidence § 2313, at 609 [5th. ed].) Under appropriate circumstances, the privilege would be required to yield to social policy considerations. Specifically, in Matter of Jacqueline F., the privilege was required to yield to the State’s role of parens patriae, the State’s vital interest in the custody of the child, and the deliberate attempt to avoid a court mandate regarding custody. Quite simply, the attorney/client privilege was overcome by the State’s concern for the best interests of the child.
Distinguished by the Matter of Jacqueline F. Court were those instances in which a client legitimately communicated information to an attorney with the full expectation that the information would be kept confidential for a legitimate purpose. Such as where one spouse legitimately fears reprisals by the other spouse. (Taylor v Taylor, 45 Ill App 3d 352, 359 NE2d 820; Waldmann v Waldmann, 48 Ohio St 2d 176, 358 NE2d 521.) Or as in Matter of Kaplan (supra), where the client permitted his attorney to reveal certain information to an investigating body, but feared for his safety and desired his identity to be kept confidential for his own protection. It, therefore, has been said that where the client’s anonymity is essential for the client’s protection, the privilege will extend to the client’s identity. (58 NY Jur 2d, Evidence and Witnesses, § 873, at 570; Matter of Kaplan [Blumenfeld], supra.)
Code of Professional Responsibility DR 4-101 (22 NYCRR *523 1200.19) indicates (at 22 NYCRR 1200.19 [b]) that, except where permitted by DR 4-101 (C), a lawyer shall not knowingly reveal a confidence or secret of a client nor use a confidence or secret of a client to the disadvantage of the client.
Rule 1200.19 (c) (2) indicates that a lawyer may reveal confidences or secrets when permitted by disciplinary rules, required by law or by court order.
Rule 1200.19 (a) defines a confidence as information protected by the attorney/client privilege under applicable law. And a secret as other information gained by the lawyer in the professional relationship, which the client has requested be held in confidence.
A significant point to be gleaned from the above rules is that information does not rise to the level of either a confidence or a secret unless an attorney/client relationship first exists. Even then an attorney may reveal such information under applicable law or a court order.
The rationale for the protection afforded confidences or secrets is set forth in EC 4-1. That Ethical Consideration reminds us, were reminding needed, that the attorney/client relationship and the proper functioning of the legal system requires an attorney to preserve the confidences of one who has employed or sought to employ him. The reason for this is both a very basic one and yet one of paramount concern to our entire legal system. A client must feel free to discuss whatever he wishes with his lawyer.
Falkenhainer v Falkenhainer (198 Misc 29 [Sup Ct, Nassau County 1950]) was a divorce action in which custody was awarded to the plaintiff husband. There the court ordered the attorneys for the defendant wife to divulge her present whereabouts in order to locate the child. The attorney/client privilege was not found to render such information immune from disclosure. The court found that for a communication to be protected it must be one which is essentially confidential and relates to the subject matter on which advice was given. The communication to the attorney of the client’s residence was not essential to the attorney’s advice or counsel.
Likewise, in Anonymous v Anonymous (59 Misc 2d 149 [Sup Ct, Nassau County 1969]), a habeas corpus proceeding, the court found that the attorney for an adoptive mother could not refuse to identify his clients on the ground the information was confidential. In directing disclosure, the court found *524 that the only purpose in respecting the claim of privilege would be to frustrate the court’s legitimate process and concern for the welfare of the child. Here, unlike Matter of Kaplan (supra), there was no fear of reprisal if the information was revealed.
People ex rel. Vogelstein v Warden (150 Misc 714 [Sup Ct, NY County 1934], supra) is a most well-researched and well-reasoned decision on this issue. Vogelstein involved an attorney who had represented 12 defendants in a policy prosecution. On the theory that there was a systematic and organized policy operation in existence a Grand Jury was convened upon the subject and the attorney was called to testify. The attorney refused to testify as to the identity of the person who had hired him upon the ground that such information was privileged. His refusal was found to be improper and he was remanded to jail for contempt. Vogelstein was similar to the case before this court because the attorney clearly feared that his client would be prosecuted if his identity was revealed.
In deciding Vogelstein (supra), Justice Shientag noted that, although the privilege is an ancient one, it is not one guaranteed by the Constitution. The purpose of the privilege not being to shield someone from guilt. As Justice Shientag stated (supra, at 717):
"Its primary object was to secure the orderly administration of justice by insuring frank revelation by the client to the attorney without fear of a forced disclosure; in other words, to promote freedom of consultation. To be sure the exercise of the privilege may at times result in concealing the truth and in allowing the guilty to escape. That is an evil, however, which is considered to be outweighed by the benefit which results to the administration of justice generally.
"There is nothing in the books to show that the privilege was to extend to the fact of the retention of counsel. No point is made that the employment of counsel should be shrouded with secrecy. The retention of counsel was to call the privilege into operation. The privilege itself was to extend only to communications between a client and an attorney who had been retained. The name or identity of the client was not the confidence which the privilege was designed to protect”.
Further enunciated was the commonsense point that an attorney must first identify his client before the privilege can ever be established. To hold otherwise would give every attorney the opportunity to avoid questioning by simply claiming *525 that the information was privileged since it was learned from a client — a client who would remain unknown. As Justice Shientag stated (supra, at 718) in quoting United States v Lee (107 F 702): " 'The court has a right to know that the client whose secret is treasured is actual flesh and blood, and demand his identification’ ”.
Many cases were cited by Justice Shientag in establishing that the great weight of authority in both England and the United States is to the effect that a client’s identity is not protected by the attorney/client privilege. Then, in addressing the point that the revelation of the client’s identity might be detrimental to the client, Justice Shientag stated (supra, at 720): "So in the instant case, the fact that the disclosure may be harmful to the alleged client should not operate to extend the client-attorney privilege beyond the scope clearly outlined by its history, its purpose and the principles underlying it. If the contention of the relator should be upheld and disclosure of the alleged client’s name prohibited, the injury that would result to the correct and orderly administration of justice would be immeasurably greater than the benefit that would inure to the relation of attorney and client. Notwithstanding its ancient history and general acceptance, 'the privilege remains an anomaly. Its benefits are all indirect and speculative; its obstruction is plain and concrete * * * It is worth preserving for the sake of a general policy; but it is nonetheless an obstacle to the investigation of the truth. It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle’. (Wigmore, Evidence § 2291)”.
Our own Court of Appeals was faced with a situation similar to that faced by the Vogelstein court in Matter of Priest v Hennessy (51 NY2d 62, supra). In that case, a Grand Jury had called attorneys who had represented prostitutes and inquired as to who had hired them to represent the prostitutes. The attorneys sought to quash the Grand Jury subpoenas; their motion was denied. The Court of Appeals found that in such a situation the burden is upon the party asserting the attorney/client privilege to establish that it exists. Regarding that, the Court made four points:
(1) There is no privilege unless an attorney/client relationship exists;
(2) Even where an attorney/client relationship exists, not all communications are privileged. Only protected are those confi *526 dential communications made for the purpose of obtaining legal advice or services;
(3) The burden of proving each element of the privilege rests upon the party asserting it; and
(4) Even if the technical elements of the privilege are met, the privilege may still yield to strong public policy considerations.
Buttressing this last point is the statement from Justice Cardozo in Clark v United States (289 US 1, 13) that: "[T]he recognition of a privilege does not mean that it is without conditions or exceptions. The social policy that will prevail in many situations may run foul in others of a different social policy, competing for supremacy. It is then the function of a court to mediate between them, assigning, so far as possible, a proper value to each”.
The court finds that in the case before it, it is proper to permit the examination before trial of Michael Gilberg, Esq. Upon this application, it has not been established by Mr. Gilberg, or by Mr. Gilberg on behalf of a client, that an attorney/client relationship exists or has ever existed. That being the case of the party asserting the privilege has not met his burden of proof (Matter of Priest v Hennessy, supra), and the privilege has, therefore, never even arisen.
Further, had the attorney/client privilege applied, this court finds, upon the great weight of authority previously cited, that it would not be appropriate under these circumstances to protect the client’s identity from disclosure. (Matter of Jacqueline F., supra; Matter of Kaplan [Blumenfeld], supra; People ex rel. Vogelstein v Warden, supra; McCormick, Evidence, op. cit.)
Further, the court finds that the name and address of the person at issue would not fall within the "protection” exception to revealing such information under the circumstances at bar. In the cases which have been cited, it was determined to shield the client’s identity in order to "protect” the client from reprisals from a spouse as well as to protect an individual who apparently feared for his safety having revealed information to an investigation commission. (Matter of Kaplan [Blumenfeld], supra; Taylor v Taylor, supra; Waldmann v Waldmann, supra.) In those cases, the legitimate expectation of confidentiality flowed from a fear for the client’s safety. No such fear is evident in the matter before the court. In this case, the apparent fear is that if the individual’s identity is *527 revealed, a civil lawsuit will soon follow and perhaps a criminal investigation and prosecution as well. Are these the type of eventualities which this court should protect against by utilizing the protective shield of the attorney/client privilege? Particularly when the only information being sought is the individual’s identity. This court thinks not.
As was stated in People ex rel. Vogelstein v Warden (supra, at 717), "the purpose of the privilege is [not] to shield guilt”. And, as was indicated by Justice Cardozo in Clark v United States (supra), in balancing the relative importance of the privilege vis-á-vis other competing social policy, it is the duty of the court to mediate between them and to assign a proper value to each. This court finds that the honor of the legal profession and the integrity of legitimate legal process require this information to be revealed.
The applicant is not permitted to obtain from Mr. Gilberg any information confided within the context of an attorney/ client relationship other than the individual’s full name and address. No information shall be given about the incident involved. No confidences breached as to what may have been said, nor as to what may have taken place that fateful evening, nor as to any information whatsoever which might become the seed for a successful civil or criminal action against the unknown individual — save for that individual’s identity. Such limitations, however, do not apply to the examination before trial of former Police Chief Arthur Dallas.
The motion is granted and the examinations before trial of Michael Gilberg, Esq. and Arthur Dallas shall be held at a location within the County of Westchester on October 9, 1992 at 10:00 a.m. and shall continue until completion. The location of the examination before trial shall foe agreed upon between the attorney for the applicant, Mr. Gilberg, and Mr. Dallas. If those three individuals cannot agree upon the location, the location shall then be chosen by the applicant’s attorney, Mr. Rudnick. This date may not foe changed without the prior written consent of this court.