## COURT OF APPEALS,

### Nov. 15, 1910

# THE PEOPLE v. SAMUEL D. AUSTIN.

### (199 N. Y. 446.)

**(1.) MURDER—EVIDENCE SUFFICIENT TO SUSTAIN VERDICT.**

On examination of the record on the trial of defendant for homicide, *held,* not only is there evidence to sustain the verdict of the jury, but the verdict was right; that defendant killed his wife with a deliberate and premeditated design to effect her death, and at the time of such killing he knew the nature and quality of the act and that it was wrong.

**(2.) SAME—DEFENCE OF INSANITY—ADMISSIBILITY OF EVIDENCE SUSTAINING SUCH DEFENSE.**

The defendant pleaded " not guilty, on the grounds of insanity." For the purpose of sustaining this defense a witness was called to testify that, while on a visit to his father, defendant " took a revolver and some money." It appeared on cross-examination that " he took it out of his father's trunk." *Held,* that it was not error for the court to inquire whether it was taken by his father's permission since it was proper to ascertain the nature of the act which it was claimed tended to show defendant's irresponsibility.

**(3.) SAME—WHEN TESTIMONY OF PHYSICIAN NOT PRIVILEGED—CODE CIV. PRO. SEC. 834.**

The testimony of a physician was not privileged by the Revised Statutes and is not privileged by the present statute, except when his information is " acquired in attending a patient in a professional capacity," and where such information " was necessary to enable him to act in that capacity. The burden is upon the party seeking to exclude the testimony of a physician under section 834 of the Code of Civil Procedure to bring the case within its provisions.

**(4.) SAME.**

A physician was appointed by the court on application of de-

fendant's counsel to examine defendant as to his sanity. The physician was not called by defendant. He was called by the prosecution and was allowed, under defendant's objection, to testify that he had made examinations of the prisoner. He was not allowed to testify further as to any material fact. *Held,* no error.

APPEAL from a judgment of the Supreme Court, rendered October 27, 1909, at a Trial Term for the county of Westchester upon a verdict convicting the defendant of the crime of murder in the first degree and from an order denying a motion for a new trial.

The facts, so far as material, are stated in the opinion.

*Edward A. Scott* for appellant. The verdict was against the weight of evidence and justice requires a new trial be granted. (*People* v. *McCann,* 16 N. Y. 58; *People* v. *Taylor,* 138 N. Y. 398; *People* v. *Ferraro,* 161 N. Y. 365; *People* v. *Meringola,* 113 App. Div. 488.) The calling of Dr. Schmidt as a witness by the prosecution, even though he gave no testimony, was a grave and prejudicial error. (Code Civ. Pro. § 834.) The court committed grave and prejudicial error in the admission and exclusion of testimony. (Best on Evidence, 479; Wigmore on Evidence, § 42; *May* v. *Brown,* 3 B. & C. 113; *People* v. *Molineux,* 168 N. Y. 291; *People* v. *Shea,* 147 N. Y. 78; *People* v. *Santagata,* 130 App. Div. 225; *People* v. *Dudenhausen,* 130 App. Div. 760.)

*Francis A. Winslow, District Attorney,* for respondent. The calling of Dr. Schmidt by the People does not present reversible error. (*Griffiths* v. *Met. Ry. Co.,* 171 N. Y. 106; *People* v. *Koerner,* 154 N. Y. 355; *People* v. *Schuyler,* 106 N. Y. 298.)

CHASE, J. The defendant shot and killed his wife September 4, 1909. He was indicted for the crime of murder in the

first degree and charged with committing the crime from a deliberate and premeditated desing to effect death. On being arraigned he pleaded " Not guilty on the grounds of insanity." Upon the trial the jury found him guilty.

After a careful examination of the record, we are not only satisfied that there is evidence to sustain the verdict of the jury, but that their verdict was right, and that the defendant killed his wife from a deliberate and premeditated design to effect her death, and that at the time of such killing he knew the nature and quality of the act he was doing and that it was wrong.

The defendant was represented on the trial by able counsel. The charge of the court to the jury was impartial, and to it no objection or exception was taken by the defendant. The judgment of conviction must stand, unless some ruling was made by the court during the trial that was erroneous, and by which the substantial rights of the defendant were prejudiced.

We will refer briefly to the rulings of the court of which the defendant's counsel seriously complains.

The counsel for the defendant called a witness by whom he attempted to show that the defendant prior to the time of the homicide did acts and made statements that were irrational. At the time referred to by the witness she was living with the defendant's father as his wife, and she testified that at one time the defendant visited them and she related things that were said and done by the defendant at that time, and among other things that " He took a revolver and some money. I think it was $75."

Upon cross-examination of this witness the district attorney, after asking a question which was not answered, asked the witness the following question: " Q. Did he take money and a revolver from the trunk of Austin, his father ? "

No objection was made to this question and the witness answered: " He took it out of his father's trunk."

The witness was then asked: "Q. With his father's permission?"

To this the defendant's counsel objected as incompetent, irrelevant and immaterial. The objection was overruled and the defendant's counsel excepted. No answer was made to such question and the court then asked the witness the following questions, to which the answers appended thereto were given without objection, namely: "Q. Did he by his father's permission take it? A. No, sir."

"Q. His father was not there at that time? A. No, sir."

"Q. Did he have your permission? A. No, sir."

It is now claimed that such cross-examination violated the general rule that when a person is on trial for one crime evidence cannot be given of a separate and independent crime in no way connected with the crime for which he is being tried. The defendant's counsel, for the purpose of showing that certain acts and conversations of the defendant were irrational, and of forming a basis for a hypothetical question to an expert alienist, had ascertained from the witness that the defendant at the time of said visit to her house had taken a revolver and some money. In determining what influence, if any, the fact of taking the revolver and money should be given upon the question of the defendant's responsibility for his acts, it was material to ascertain whether the witness intended to assert that the taking was felonious or by permission. The district attorney sought to ascertain whether the witness intended to assert that the revolver and money were taken without permission of the owner thereof, or of the person in whose custody they were left. It is doubtful whether the present claim of the defendant's counsel was fairly presented to the trial court, but that is immaterial, because in any event the cross-examination as stated was not a violation of the general rule mentioned, but related to a proper subject of inquiry to ascer-

tain the nature of the act which it was claimed among others established the defendant's irresponsibility for the homicide.

Just prior to the trial the counsel for the defendant applied to the court, upon an affidavit setting forth that the defendant was without means with which to procure the services of a physician to examine the defendant as to his sanity, so that his testimony might be used at the trial of the action, and asked that a physician be appointed to examine into the condition of the defendant and attend upon the trial and testify, if the defendant so elected, and that the charge for such services of the physician be made against the county of Westchester.

The order was made and the physician so appointed examined the defendant, but he was not called on behalf of the defendant as a witness at the trial. After testimony as to the defendant's sanity was offered the district attorney called said physician in rebuttal and he testified that at the request of the defendant's counsel he made an examination of the defendant in the county jail. The defendant's counsel then objected to the witness giving any testimony, and a discussion between the court and counsel followed, after which the following is a record of what occurred:

" The Court: This is preliminary, and I will overrule the objection.

" [Exception taken by Mr. Scott.]

" Q. Did you, Doctor, after seeing Mr. Scott, make an examination in the county jail of this county of Samuel Austin, this defendant? A. I made several examinations.

" Q. How many examinations did you make?

" Mr Scott: I make the same objection.

" [Objection overruled. Exception taken by Mr. Scott.]

" A. I saw him four times, but twice I couldn't get any examination.

" By the Court:

" Q. You couldn't talk with him, you mean? 'A'. No, he would not talk to me.

" By Mr. Davis:

" On the first occasion did any one accompany you? 'A. Yes, Mr. Scott.

" Q. What examination did you make of the defendant in the presence of Mr. Scott on the first visit?

" Mr. Scott: Objected to as immaterial, irrelevant and incompetent, particularly at this time, on the ground that this is a privileged communication; it was an examination made on the order of this Court, and any examination he made of this defendant is entirely privileged.   *   *   *

" The Court: I will sustain the objection.  I am not entirely satisfied that my ruling is right, but I shall give the defendant the benefit of my doubt at this time."

No evidence whatever was given by the witness of any personal examination of the defendant or of any conversations had with him, and the witness was not asked and did not express any opinion as to the sanity or insanity of the defendant.  The testimony of a physician was not excluded at common law.  The confidences between a physician and patient were first protected from involuntary exposure in this state by the Revised Statutes, which provided: " No person duly authorized to practice physic or surgery, shall be allowed to disclose any information which he may have acquired in attending any patient, in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him, as a surgeon."   (R. S. part 3, ch. 7, tit. 3, art. VIII, § 73.)

The revisers in their notes, referring to the section quoted, say: " Unless such conversations are privileged men will be incidentally punished by being obliged to suffer the consequences of injuries without relief from the medical art, and

without conviction of any offense. Besides, in such cases, during the struggle between legal duty on the one hand, and professional honor on the other, the latter, aided by a strong sense of the injustice and inhumanity of the rule, will, in most cases, furnish a temptation to the perversion or concealment of the truth. too strong for human resistance."

The testimony of a physician was not privileged by the Revised Statutes and is not privileged by the present statute (Code Civ. Pro. § 834), except when his information is " acquired in attending a patient, in a professional capacity," and where such information " was necessary to enable him to act in that capacity."

This court has frequently held that the burden is upon the party seeking to exclude the testimony of a physician under section 834 of the Code of Civil Procedure to bring the case within its provisions. (*People* v. *Schuyler,* 106 N. Y. 298; *People* v. *Koerner,* 154 N. Y. 355; 12 N. Y. Crim. 503; *Fisher* v. *Fisher,* 129 N. Y. 654; *Griffiths* v. *Metropolitan St. Ry. Co.,* 171 N. Y. 106.)

It is clear from the statute itself and from the authorities that if the physician never attended the defendant in a professional capacity and never obtained information from him to enable him to prescribe in such professional capacity, he can testify the same as any other person. In such a case the seal of confidence existing by virtue of the statute between physician and patient and made necessary to obtain the fullest information in no way applies.

It does not appear in this case from anything before the court that the physician by what he said to the defendant led him to believe that he was there to prescribe for him, or that the defendant by what was said by the physician was led to accept him as a physician and consequently to disclose to him

information that perhaps would not otherwise have been given, as in *People* v. *Stout* (3 Parker's Crim. Rep. 670).

Where a physician is sent to a jail by the district attorney to make an examination of the prisoner's mental and physical condition, the relation of patient and physician as contemplated by section 834 of the Code of Civil Procedure does not exist and the prisoner is not thereby compelled to furnish evidence against himself. (*People* v. *Kemmler,* 119 N. Y. 580; *People* v. *Sliney,* 137 N. Y. 570, 580; *People* v. *Hoch,* 150 N. Y. 291, 303; 11 N. Y. Crim. 488.)

In *People* v. *Schuyler* (*supra*) a physician was called as a witness for the People, who was employed by the board of supervisors of the county as the jail physician and as such had medical charge of all prisoners in the jail. The defendant was confined in the jail for six months and the physician examined the defendant at the request of both parties. It did not appear that the defendant was at any time sick during the six months, or that the witness was called to attend upon or prescribe for him as a physician. The physician testified in answer to a hypothetical question as to the defendant's sanity and it was held that the evidence was competent even if the witness was influenced by seeing the defendant while in the jail.

There is nothing disclosed in the record in this case to show that the examination which the physician made of the defendant in the presence of his counsel was not competent or that it was privileged by reason of section 834 of the Code of Civil Procedure. The fact that the witness was called and asked certain preliminary questions as disclosed, if objectionable for any reason, was clearly not objectionable so long as it did not appear that a full disclosure by him of what he saw and heard while examining the defendant under an order of the court was not of itself objectionable.

No error appears in the trial of the case to the prejudice

of the defendant and the judgment of conviction should be affirmed.

CULLEN, Ch. J., HAIGHT, VANN, WERNER, WILLARD BARTLETT and HISCOCK, JJ., concur.

Judgment of conviction affirmed.

NOTE ON PRIVILEGED COMMUNICATIONS OF PHYSICIANS.

**GENERALLY.**

Section 834, Code Civ. Pro. is applicable to criminal actions under Code Crim. Pro. Sec. 532. The People v. Murphy, 101 N. Y. 126.

The prohibition includes information received through the sense of sight as well as that communicated through the ear. Grattan v. Met. Life Ins. Co., 80 N. Y. 281.

The object of the statute prohibiting the disclosure of professional information acquired by a physician in attending a patient is to protect the latter, not to shield one charged with his murder. Pierson v. The People, 79 N. Y. 424.

A physician called in consultation is within the prohibition. Renihen v. Dennon, 103 N. Y. 573.

The prohibition does not relate to information obtained by him or any other way than on attending his patient. Fisher v. Fisher, 129 N. Y. 654.

Prohibition extends to non disclosure of information of the existence of an ailment, though not the subject of his attendance or treatment, acquired through examination of patient in attending him in a professional capacity. Nelson v. Village of Oneida, 156 N. Y. 219.

As to the admissibility of statements made by defendant to medical expert who examined him during the trial and subsequently related them to jury. See People v. Furlong, 187 N. Y. 198, 20 N. Y. Crim. 458.

Failure of party on Civil Trial, to object to prohibited testimony of Physicians, precludes him from objecting to same evidence in subsequent criminal trial. People v. Bloom, 193 N. Y. 1.

## WAIVER OF PRIVILEGE.

The objection can only be waived by the patient himself, his executor or administrator may not do so. Westover v. Aetna Life Ins. Co., 99 N. Y. 56.

Where the prohibition has been waived, it cannot be recalled. McKinney v. Grand St., 104 N. Y. 352.

The calling of a physician as a witness by his patient is of itself an express waiver. Alberti v. N. Y. L. E. & W. R. R. Co., 118 N. Y. 77.

The physician may testify as to the dates and number of calls. Patten v. U. L. & A. Assn., 133 N. Y. 450.

Waiver under Sec. 836, Code Civ. Pro. of provisions of Sec. 834 relating to patients' secrets, by taking physicians deposition. When such act is equivalent to waiver on the trial or by stipulation. See Clifford v. Denver & G. R. R. R., 188 N. Y. 349.

Waiver of provisions of section. See People v. Bloom, 193 N. Y.; Holcomb v. Narris, 166 N. Y. 257; Holden v. Met. Life Ins. Co., 165 N. Y. 13; Foley v. Royal Arcanum, 151 N. Y. 196.

## EVIDENCE, WHEN ADMISSIBLE.

Burden rests on one desiring to establish that testimony of physician comes within prohibition of Section 834. And where there are no facts shown which would warrant the presumption that the relation of physician and patient existed or would justify the conclusion that such testimony had any relation to professional treatment its exclusion upon the ground that it was privileged is reversible error. Griffith's v. Met. St. Ry. Co., 171 N. Y. 106.

## EVIDENCE, WHEN INADMISSIBLE.

A physician cannot be asked, "What opinion do you form, based on the general sight of the man before you made an examination or before you had any conversation with him?" Grattan v. Met. Life Ins. Co., 92 N. Y. 274.

The burden is on the party seeking to exclude a physician's testimony to show that the information was acquired in attending a patient in a professional capacity and that it was necessary to enable him to act in that capacity. People v. Schuyler, 106 N. Y. 298.

A physician who has attended upon deceased in a professional capacity is not a competent witness for contestants to a will to testify

from knowledge acquired while so attending.    Matter of Coleman, 111 N. Y. 220.

Where a physician called by a defendant railroad testified that plaintiff the day after the accident called upon and consulted him he cannot testify that he conversed with him about his injuries or made an examination of him.    Feeney v. L. I. R. R. Co., 116 N. Y. 375.

Testimony of physicians or his certificate as to cause of death of patient who has no knowledge except as acquired in professional capacity, is inadmissible.    Davis v. Supreme Lodge Knights of Honor, 165 N. Y. 159.