THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* EMIL DECINA, Appellant.

Fourth Department, May 25, 1956.

*Charles J. McDonough* for appellant.

*John F. Dwyer, District Attorney* (*Leonard Finkelstein* of counsel), for respondent.

McCURN, P. J. The defendant appeals from a judgment convicting him of criminal negligence in violation of section 1053-a of the Penal Law. The appeal also includes and brings up for review an order denying a demurrer to the indictment.

On March 14, 1955 while defendant was driving his automobile along Delaware Avenue in the city of Buffalo, the automobile went out of control, jumped the curb and killed four children who had been walking on the sidewalk. The indictment alleges that the defendant was " culpably negligent in operating a motor vehicle, knowing at the time that he was subject to epileptic attacks or other disorder rendering him likely to lose consciousness for a considerable period of time, * * * and while doing so suffered an attack and loss of consciousness ", causing the automobile to go out of control and causing the death of the children.

The statute as we read it does not necessarily contemplate that the driver be conscious at the time of the accident or that he consciously and knowingly choose the path or regulate the speed of his motor vehicle. It suffices if he is aware of a condition which will deprive him of effective control over the operation of his vehicle and can foresee that such condition is likely to occur. It naturally follows that by nevertheless undertaking to operate a vehicle, having such knowledge he evinces a " disregard of the consequences which may ensue from the act, and indifference to the rights of others " (*People* v. *Angelo,* 246 N. Y. 451, 457).

Under circumstances similar to those prevailing in the present case, the Appellate Division, Second Department has recently held that the indictment stated a crime under section 1053-a (*People* v. *Eckert,* 1 A D 2d 903). There the indictment alleged that the defendant had for some time prior to the accident suffered from a disease which caused epileptic seizures and

which "from time to time would without previous warning render said defendant in a physical condition under which he would be unfit to operate an automobile and to control the same", that defendant was well aware of this condition and had been advised by his physician not to operate an automobile, that he nevertheless did so and, by reason of a seizure, struck and killed a young woman. The court held that "the proof, if unexplained or uncontradicted, would warrant a finding by a trial jury that respondent was aware of the seriousness of his illness and the peril inherent in his driving and that, consequently, he was culpable." (See, also, *State* v. *Gooze,* 14 N. J. Super. 277; *Smith* v. *Commonwealth,* 268 S. W. 2d 937 [Ky.].)

We conclude that the demurrer to the indictment was properly overruled. We would affirm the judgment of conviction were it not for an error in the reception of evidence of a hospital physician who testified as to defendant's medical history and physical condition.

The witnesses at the scene of the accident described the defendant as unsteady; he staggered and seemed dazed. In reply to a question as to the cause of the accident he stated, "Lady, I blacked out from the bridge, and that's all". He swayed from side to side; his arm was bleeding and he seemed "knocked out". When informed by a policeman that he was under arrest and would have to be taken to the police station he refused and resisted, whereupon he was handcuffed and taken to the station and later to the Meyer Memorial Hospital where he remained for a period of three days under guard by a policeman.

On the evening of his entry into the hospital he was examined by Dr. Wechter, house physician on the staff of the hospital. Among other things Dr. Wechter questioned him as to his prior medical history; wrote a summary of the examination upon the hospital chart; saw him again on two later occasions and later wrote the discharge sheet at the time of his discharge from the hospital. Dr. Wechter was a witness for the People upon the trial. After objection by defendant's counsel on the ground that his testimony was privileged under section 352 of the Civil Practice Act and exception duly taken, he was allowed to testify to defendant's prior medical history as related to him by the defendant at the time of the examination, and to his diagnosis. His testimony summarily stated is to the effect that defendant told him at the time of the examination that when he was seven years old he was struck by an automobile resulting in a head injury and that he had suffered convulsions from time to time since the receipt of that injury; that he had an operation in

1946 and was free from convulsions from that time until 1950; he had four convulsions during 1950 and from then on until 1954 he had minor seizures not resulting in loss of consciousness; he had four or five seizures in 1954 with loss of consciousness, the last one prior to the accident having occurred in September, 1954. He had had treatment; had seen a neurologist for a check-up two weeks prior to the accident in question and had been taking medication to prevent the seizures. The doctor made a diagnosis of Jacksonian epilepsy and testified that in his opinion the defendant had had a seizure of epilepsy at the time of the happening of the accident.

The essential element of the crime of which the defendant was convicted namely, that he was " culpably negligent in operating a motor vehicle, knowing at the time that he was subject to epileptic attacks or other disorder rendering him likely to lose consciousness for a considerable period of time ", rests entirely upon the testimony of Dr. Wechter.

The Meyer Memorial Hospital is a public hospital operated by the County of Erie. Dr. Wechter is a salaried member of the medical staff holding the position of resident house physician. When defendant was admitted to the hospital a so-called pink slip was delivered to the superintendent reading as follows: " Buffalo Police Department, Inter-Departmental Correspondence. To Superintendent of Meyer Memorial Hospital, from Raymond J. Smith, Captain, Precinct 17. Subject, Re: One Emil A. Decina, 87 Sidney, CD-533284, date 3-14-55. Sir: We are forwarding one Emil A. Decina, age 33, of 87 Sidney Street, to your hospital for examination on the recommendation of District Attorney John Dwyer and Commissioner Joseph A. DeCillis. Mr. Decina was involved in a fatal accident at 2635 Delaware Avenue at 3:40 P.M. this date. There were three fatalities, and possibly four. A charge will be placed against Mr. Decina after the investigation has been completed." The pink slip was brought to the attention of Dr. Wechter prior to the time of the examination.

The question arises whether the examination in question arose out of the relation of physician and patient and for the purpose of treatment or whether, as claimed by the People, the physician was acting solely as a representative of the prosecuting authorities. The physician himself appears uncertain as to his status. When confronted with his testimony upon a previous trial he testified as follows:

" Q. * * * were you asked * * * 'Now, you did question him for the purpose of treatment, did you not?' and did you answer, ' Yes, I should say, among other things.' Were

you asked that question and did you give that answer? A. Yes, I did.

" Q. Was that a true statement when you made it at the last trial? A. I will say, yes, that it was.

" Q. And is it true today? A. I feel differently on that question today.

" Q. You have changed your mind, have you, Doctor? A. I think later evidence from the last trial brought it around that I really didn't treat the patient."

From the entire testimony the conclusion is irresistible that the acts of Dr. Wechter including the examination and diagnosis, the entries made by him upon the hospital chart are all acts which he was called upon to perform in the usual course of his duties as resident house physician. The mere fact that he had the pink slip from the police department did not separate him from his duties as house physician. The fact that he did not otherwise treat the patient and that treatment after examination and diagnosis by Dr. Wechter was administered by other doctors and nurses who had access to the information which he had written upon the hospital chart would seem immaterial. Concededly the defendant did receive medical treatment at the hospital. From the physical condition and appearance of the defendant at the scene of the accident there was apparent need for medical treatment. We may readily infer that was at least one purpose which the police had in mind in sending him to the hospital. Such action was reasonably requisite on the part of the police (see *Dunham* v. *Village of Canisteo,* 303 N. Y. 498).

Dr. Wechter obviously acted in a dual capacity: (1) in the performance of his duties as resident house physician at the hospital; and (2) in response to the pink slip sent by the police department. The essential function performed by the hospital and its medical staff is the treatment of patients. Section 352 of the Civil Practice Act does not become inoperative because of such conflicting allegiances. The relation of physician and patient once established comes within the protection of the statute, where the transactions in question are either in whole or in part for the purpose of, and involve treatment of the patient (see *People* v. *Murphy,* 101 N. Y. 126; *Obermeyer* v. *Logeman Chair Mfg. Co.,* 120 Mo. App. 59, affd. 229 Mo. 97; *Battis* v. *Chicago, Rock Island & Pacific Ry. Co.,* 124 Iowa 623, 629). Moreover the doctor did not disclose to the defendant that he was in possession of the pink slip from the police department or that he was examining him for any reason other than the ostensible purpose of diagnosis and treatment for his ills. The statute is remedial and should be liberally construed in

favor of the patient. It was held in *People* v. *Stout* (3 Parker Cr. Rep. 670, 676) that where " a physician has attended upon a person, under circumstances calculated to induce the opinion that his visit was of a professional nature, and the visit has been so regarded and acted upon by the person, that the relation of physician and patient contemplated by the statute may fairly be said to exist. The spirit of the statute is thereby respected, and no great violence done to its literal terms." It is also of interest to note from the opinion of CHASE, J., in *People* v. *Austin* (199 N. Y. 446, 452) that one of the tests applied in that case to determine the competency of the testimony of the physician was whether or not the conduct of the physician was such as to cause the defendant to accept him as a physician and thereby disclose to him information which would otherwise not have been given. (See, also, *People* v. *Leyra*, 302 N. Y. 353, 363; *Smart* v. *Kansas City*, 208 Mo. 162; *Ballard* v. *Yellow Cab Co.*, 20 Wn. [2d] 67; *Norwood* v. *State*, 158 Miss. 550.)

Recognizing that the burden of establishing the confidential relationship is on the defendant, we nevertheless conclude that the evidence establishes that the transactions between the defendant and Dr. Wechter were between physician and patient for the purpose of treatment and that treatment was accomplished. We are moreover of the opinion that the surrounding circumstances in the absence of any disclosure by the physician that he had in his possession the so-called pink slip, were sufficient to cause the defendant to accept him as a physician and consequently to disclose to him important facts bearing on his criminality, which otherwise might not have been given.

The judgment of conviction should be reversed and a new trial granted.

BASTOW, J. (dissenting). I dissent and vote to affirm. Section 352 of the Civil Practice Act provides in part that " A person duly authorized to practice physic or surgery * * * shall not be allowed to disclose any information which he required in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity ". The preliminary cross-examination of Dr. Wechter extends over some 45 pages of the printed record. While isolated portions may be extracted to sustain a contrary viewpoint, I conclude upon a complete reading of the preliminary cross-examination that the information obtained by the physician from the defendant did not fall within the statutory provision and was properly received in evidence by the trial court.

In this lone dissent it would serve no useful purpose to do more than set forth briefly my views upon the applicable law. A study of the authorities in this State, it seems to me, discloses a clear line of demarcation between information obtained by a physician not necessary to enable him to act and information required by the doctor to treat the patient. The distinction is well stated in *Edington* v. *Ætna Life Ins. Co.* (77 N. Y. 564, 569–570) where it was said that "Before information can be excluded under this statute, it must appear that it was such as the physician acquired in some way while professionally attending a patient; and it must also be such as was necessary to enable him to prescribe as a physician, or to do some act as a surgeon. It is not sufficient to authorize the exclusion that the physician acquired the information while attending his patient; but it must be the necessary information mentioned. If the physician has acquired any information which was not necessary to enable him to prescribe, or to act as a surgeon, such information he can be compelled to disclose, although he acquired it while attending the patient; and before the exclusion is authorized, the facts must in some way appear upon which such exclusion can be justified."

See, also, *Griffiths* v. *Metropolitan St. Ry. Co.* (171 N. Y. 106, 111); *People* v. *Sliney* (137 N. Y. 570, 580); Wigmore on Evidence (Vol. 8 [3d ed.], § 2381) and cases therein cited. On the other hand, *People* v. *Murphy* (101 N. Y. 126) and *People* v. *Stout* (3 Parker Cr. Rep. 670) represent the classic case where there was proof that the physician did treat or prescribe for the defendant or witness and the relationship within the meaning of the statutory provision was held to have been established. The rule is conversely stated in *People* v. *Austin* (199 N. Y. 446, 452) in the following language: "It is clear from the statute itself and from the authorities that if the physician never attended the defendant in a professional capacity and never obtained information from him to enable him to prescribe in such professional capacity, he can testify the same as any other person. In such a case the seal of confidence existing by virtue of the statute between physician and patient and made necessary to obtain the fullest information in no way applies."

The majority opinion recognizes the rule that the burden of establishing the confidential relationship is on the defendant. If, as appears, "The fact of treatment is the decisive test in this case" (*Meyer* v. *Knights of Pythias,* 178 N. Y. 63, 68) we turn to the record to ascertain how the defendant sustained this burden. Quite aside from the *ipse dixit* of Dr. Wechter upon the subject we find nothing in the record concerning treatment

of the defendant while he was in the hospital except the fact that a technician took an electroencephalogram which was interpreted by a Dr. Link and that laboratory work was done. The defendant did not testify and rested following the close of the People's case. Absent any other proof from the defendant it would seem that if he seriously contended that the information given to Dr. Wechter was used to treat or prescribe for him that the best evidence would have been the hospital records. Yet when these were offered by the People the defendant asserted that they were privileged and successfully kept them out of evidence.

In this posture of the case it is difficult for me to see how the defendant sustained the burden of proving that the information obtained by the doctor was (1) required in attending a patient in a professional capacity and (2) that it was necessary to enable Dr. Wechter or any other doctor to treat the defendant. There is no evidence as to whether the defendant during the three days in the hospital was treated for injuries received in the accident or for Jacksonian epilepsy. If treated solely for injuries received in the accident there is no showing that the history obtained relating to prior seizures was " information which he [or any other physician] required in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity ".

The judgment of conviction should be affirmed.

All concur, except BASTOW, J., who dissents and votes for affirmance in a separate opinion.

Present — McCURN, P. J., KIMBALL, WHEELER, WILLIAMS and BASTOW, JJ.

Judgment of conviction reversed on the law and a new trial granted.