In the Matter of the CITY COUNCIL OF THE CITY OF NEW YORK, Respondent, against SIGISMUND S. GOLDWATER, as Commissioner of Hospitals of the City of New York, et al., Appellants.

Argued October 4, 1940; decided November 26, 1940.

*William C. Chanler*, Corporation Counsel (*Seymour B. Quel* and *Oscar L. Tucker* of counsel), for appellants.

*Thomas H. McManus* for respondent.

LEHMAN, Ch. J. A special committee, appointed by the City Council of the City of New York in accordance with section 43 of the Charter of the city (effective January 1, 1938) to investigate charges of negligence and maladministration in the treatment of patients at Lincoln Hospital, has issued and served *subpœnas duces tecum* addressed to the Commissioner of Hospitals of the City of New York and to the Medical Superintendent of Lincoln Hospital which required the production of specified records of the hospital,

including: "All case records, reports, charts, diagnoses, X-rays and other records relating to the following patients," etc. The Corporation Counsel advised the Commissioner of Hospitals and subsequently confirmed the advice by letter that "No information acquired by physicians or nurses in attending a patient in a professional capacity may be disclosed in any trial or court proceeding by reason of the provisions of section 352 of the Civil Practice Act, except on consent of the persons treated or their duly authorized representatives. The privilege conferred by this section applies to hospital records or documents, as well as to the personal testimony of witnesses. In my opinion, the privilege is applicable to a Councilmanic investigation." The Commissioner appeared before the committee and produced some of the records called for by the subpœnas, but refused to produce any case cards or records which would disclose "confidential information relating to the diagnosis and treatment of patients." Upon the application of the Special Councilmanic Committee an order was made by the Supreme Court directing the persons named in the subpœnas "to produce before said Committee * * * all the books, papers, records, etc., mentioned and described in the respective *subpœnas duces tecum.*"

The Legislature has commanded that: "A person duly authorized to practice physic or surgery, or a professional or registered nurse, *shall not be allowed* to disclose any information which he acquired in attending a patient in a professional capacity." (Civ. Prac. Act, § 352.) The petitioner claims, and the courts below have held, that because the command is contained in the Civil Practice Act it prohibits disclosure of such information only as evidence in an action or special proceeding brought in a court of record, and that a court may compel a physician to disclose to a committee of the Council of the city information which the physician is forbidden to divulge to a court of justice.

This court has said that: "The disclosure by a physician of information acquired in his professional character in attending a patient, where not made in the course of his

professional duty, is a plain violation of professional propriety. But the statute does not prescribe a rule of professional conduct for the government of physicians in their general intercourse with society. The common law did not protect a physician from disclosing as a witness information acquired professionally from patients (1 Green. Ev. § 248). The statute was intended to afford this protection and to protect the patient also. If a physician, disregarding the plain obligations of his situation, should, in conversation, disclose the secrets of his patient, he would, so far as we know, violate no statute, however reprehensible his conduct would be. The statute should have a broad and liberal construction to carry out its policy. By reasonable construction it excludes a physician from giving testimony in a judicial proceeding in any form, whether by affidavit or oral examination, involving a disclosure of confidential information acquired in attending a patient, unless the seal of secrecy is removed by the patient himself." (*Buffalo Loan, Trust & Safe Deposit Co.* v. *Knights Templar & Masonic Mut. Aid Assn.*, 126 N. Y. 450, at p. 455.)

Though at common law a physician, unlike a member of the bar, might be compelled to divulge as a witness information acquired by him under the seal of professional confidence, yet in the Civil Practice Act the privilege and duty of a clergyman to refuse to disclose a confession (§ 351), the privilege and duty of a physician to refuse to disclose information acquired in attending a patient in order to enable him to treat the patient (§ 352), and the privilege and duty of an attorney to refuse to disclose confidential communications from a client (§ 353), are accorded the same statutory recognition, sanction and protection. All three sections apply to "*any examination of a person as a witness* unless the provisions thereof are expressly waived upon the trial or examination by the person confessing, the patient or the client." (§ 354.)

Doubtless, as the court pointed out in *Buffalo Loan, Trust & Safe Deposit Co.* v. *Knights Templar & Masonic*

*Mut. Aid Assn.* (126 N. Y. 450, 454), " the *primary* purpose of the section was to declare the rule governing the examination of a physician as a witness in *judicial proceedings.*" (Italics are new.) All the sections to which we have referred are part of article 33 of the Civil Practice Act, which is entitled " Evidence," and the term " evidence " is applied ordinarily to proof received in judicial proceedings. Nevertheless, the statute in terms applies to " any examination," and as this court said in the opinion from which we have quoted: " The statute should have a broad and liberal construction to carry out its policy." The issuance of subpœnas by legislative and administrative bodies or officers as well as by a court, the effect of service of a subpœna, the penalty for disobedience to a subpœna properly issued and the proceedings to compel obedience, are defined or regulated by sections 403 to 408 of the Civil Practice Act, which, like the sections invoked by the appellants, are part of the article entitled " Evidence." The policy of the legislative prohibition against the disclosure of information obtained under the seal of professional confidence, as provided in sections 351 to 354 of article 33, would not be carried out if the court read into those sections a limitation which would render them inapplicable in any proceeding brought pursuant to provisions of the same article to compel such disclosure. The statute does not provide such a limitation in express terms, and there is no ground for reading such a limitation into the statute by implication. That would not be a " broad and liberal construction " of the statute but a distortion of its language and purpose.

The statutory privilege was conferred upon a physician by 2 Revised Statutes ([1st ed. 1829] p. 406, § 73). This court has pointed out that the revisers in their notes say: " Unless such conversations are privileged men will be incidentally punished by being obliged to suffer the consequences of injuries without relief from the medical art, and without conviction of any offense. Besides, in such cases, during the struggle between legal duty on the one

hand, and professional honor on the other, the latter, aided by a strong sense of the injustice and inhumanity of the rule, will, in most cases, furnish a temptation to the perversion or concealment of the truth, too strong for human resistance." (*People* v. *Austin*, 199 N. Y. 446, at pp. 451, 452.) The Legislature which has conferred the privilege may, if it chooses, limit its application. The courts may not do so.

The question of whether the privilege of a physician or a minister of religion may be asserted by a witness under a subpœna issued by a legislative committee or a person clothed with powers to hold investigations to compel the attendance of witnesses has never been directly presented to this court, but we have said that: " Those who are made witnesses in virtue of those powers are entitled to all the privileges and protection extended by the law to witnesses in judicial proceedings." (*Matter of Hirshfield* v. *Hanley*, 228 N. Y. 346, 349.) We now hold that the statutory privilege may be asserted whenever the power of a court is invoked in manner authorized by the provisions of article 33 of the Civil Practice Act to compel a witness to disclose information which under other provisions of the same article he is forbidden to disclose. (Cf. *Matter of Doyle*, 257 N. Y. 244; *McMann* v. *Securities & Exchange Commission*, 87 Fed. Rep. [2d] 377.)

The orders should be reversed and the application denied, without costs.

FINCH, J. (dissenting). It does not seem to me that we are compelled by statutory mandate to deny to a legislative committee whose avowed purpose is to uncover abuses the right to ascertain the facts.

As has been pointed out, at common law the information acquired by physicians or nurses acting in a professional capacity was not privileged. (*Buffalo Loan, Trust & Safe Deposit Co.* v. *Knights Templar & Masonic Mut. Aid Assn.*, 126 N. Y. 450, 454; *People* v. *Austin*, 199 N. Y. 446, 451. See Wigmore on Evidence [3d ed.], § 2380.) But this State, in 1828, was responsible for the legislative innovation embody-

ing such a doctrine. (Wigmore, op. cit., § 2380; *Howe* v. *Regensburg*, 75 Misc. Rep. 132, 134.) However, long ago, in construing this new privilege created by statute, this court stated that " the primary purpose of the section was to declare the rule governing the examination of a physician as a witness in judicial proceedings." (*Buffalo Loan, Trust & Safe Deposit Co.* v. *Knights Templar & Masonic Mut. Aid Assn.*, 126 N. Y. 450, 454.) In the case at bar we are concerned with a " legislative proceeding " to which the statutory rule should not be extended unnecessarily. The distinction seems eminently sound. In a " judicial proceeding " the Legislature has specified in the Civil Practice Act that no disclosure shall be made. But where we are concerned with a " legislative proceeding," there arises the transcendent interest of the People of the State in the enactment of proper laws for the conduct of government, as to which it is not unreasonable to require that the protection of the individual by privilege must bow as against the welfare and protection of large masses of citizens. It is urged that if we so deal with the physician-patient privilege we must accord like treatment to other privileges, but this does not follow since each privilege rests upon its own background.

Upon the results of the investigation for which the withheld information is sought in the case at bar, depends the action of the City Council in reference to the management of the city's own Lincoln Hospital, perhaps vitally necessary for the protection of the public of the city of New York. I am unwilling to assent, therefore, to the proposition that the State Legislature or its delegated authority, the City Council, are so circumscribed that the alleged maladministration may continue unchecked, by virtue of a " liberal construction " of section 352 of the Civil Practice Act.

The orders should be affirmed.

LOUGHRAN, RIPPEY, SEARS and LEWIS, JJ., concur with LEHMAN, Ch. J.; FINCH, J., dissents in opinion in which CONWAY, J., concurs.

Orders reversed, etc.