HARRIET WESTPHAL, an Infant, by JOHN WESTPHAL, SR., Her Guardian at Litem, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28754.)

Court of Claims, April 14, 1948.

*Henry H. Haire* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*David Marcus* of counsel), for defendant.

GREENBERG, J. This is an application by the claimant for an order directing the examination before trial of the State of New York by Drs. Blaisdell and Miller, the senior and clinical directors of Rockland State Hospital, the production of hospital records pursuant to section 296 of the Civil Practice Act, and the discovery and inspection of certain records in the possession of the County Clerk of Rockland County.

Claim has been filed herein for the recovery of damages for personal injuries sustained by the infant claimant, as a result of being assaulted and raped upon a public highway by an escaped inmate of a State mental hospital. It is averred that the eloper had on prior occasions escaped, had had assaultive proclivities and was frequently highly disturbed, was criminally insane and had such medical and other history at this hospital and at other institutions prior thereto, as to put the State on notice of his vicious and dangerous propensities, thereby requiring it to take the necessary precautions to prevent his escape and the dire consequences that ensued.

Objection has been made by the Attorney-General to the examination of the State's doctors and to the production of the case history of the assailant inmate, on the ground that such examination will entail the disclosure of information and data which are privileged communications between physician and patient within the meaning of the provisions of section 352 of the Civil Practice Act. Claimant's counsel, however, urges that the relationship contemplated by the statute does not apply

to one committed to a State mental institution, relying upon *Scolavino* v. *State of New York* (187 Misc. 253, mod. 271 App. Div. 618, affd. 297 N. Y. 460), *Munzer* v. *Blaisdell* (183 Misc. 773, affd. 269 App. Div. 970) and the Special Term decision of *Liske* v. *Liske,* (135 N. Y. S. 176) cited as their authority.

With such latter contention, this court cannot agree. (*Greff* v. *Havens,* 186 Misc. 914; cf. *Matter of Maryland Cas. Co.* [*Miller*], N. Y. L. J. June 2, 1947, p. 2163, col. 3; *Matter of Handwerger,* N. Y. L. J. Aug. 12, 1947, p. 245, col. 5.) The Legislature by the adoption of section 352 of the Civil Practice Act and its predecessor sections enacted a policy of prohibition against the disclosure of any information obtained under the seal of professional confidence. Section 352 provides:

"*Physicians, dentists and nurses not to disclose professional information.* A person duly authorized to practice physic or surgery, or dentistry, or a professional or registered nurse, shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity; unless, in cases where the disclosure of the information so acquired by a dentist is necessary for identification purposes, in which case the dentist may be required to testify solely with respect thereto, or unless, where the patient is a child under the age of sixteen, the information so acquired indicates that the patient has been the victim or subject of a crime, in which case the physician, dentist or nurses may be required to testify fully in relation thereto upon any examination, trial or other proceeding in which the commission of such crime is a subject of inquiry."

At common law, communications made by a patient to his doctor for the purpose of obtaining medical treatment, even though made in the strictest confidence, were not privileged. (1 Greenleaf on Evidence, § 248; 5 Chamberlayne's Modern Law of Evidence, § 3701; *Matter of N. Y. City Council* v. *Goldwater,* 284 N. Y. 296.) The reasons which induced the Legislature to declare in favor of the privilege were stated in *Edington* v. *Mutual Life Ins. Co.* (67 N. Y. 185, 194) as follows: "It is a just and useful enactment, introduced to give protection to those who were in charge of physicians from the secrets disclosed to enable them properly to prescribe for diseases of the patient. To open the door to the disclosure of secrets revealed on the sick bed, or when consulting a physician, would destroy confidence between the physician and the patient, and, it is easy to see, might tend very much to prevent the advantages and benefits which flow from this confidential relationship."

The provisions of the statute as originally enacted, were modified in later years. Dentists were added to those prohibited from disclosing professional information. Specific instances where disclosures are permitted were likewise incorporated. But there is nothing in the present act, or in any other statute, which distinguishes cases involving private patients from those of public institutions, State or otherwise. The Legislature which has conferred the privilege may, if it chooses, limit its application. The courts may not do so. (*Matter of N. Y. City Council* v. *Goldwater, supra*; *Munzer* v. *State of New York*, 41 N. Y. S. 2d 98.) The provisions of subdivision 9 of section 34 of the Mental Hygiene Law, formerly section 84, were not intended to vitiate the effect of section 352 of the Civil Practice Act. Subdivision 9 of section 34 provides that the director of a State institution shall:

" Keep a record, in which he shall cause to be entered at the time of reception of any patient, his name, residence and occupation, and the date of such reception, by whom brought and by what authority and on whose petition certified or received, and an abstract of all orders, warrants, requests, petitions, certificates and other papers accompanying such persons.

" The director within three days after the reception of a patient, shall make, or cause to be made a descriptive record of such case. He shall also make or cause to be made entries from time to time of the mental state, bodily condition and medical treatment of such patient during the time such patient remains under his care, and in the event of the discharge or death of such person, he shall state in such case record the circumstances thereof, and make such other entries at such intervals of time and in such form as may be required by the commissioner. Such record shall be accessible only to the director and such officers and subordinates of the institution as he may designate and to the commissioner and his representatives, except on the consent of the commissioner or an order of a judge of a court of record.''

It and other sections of the Mental Hygiene Law (§§ 20, 32) provide safeguards in maintaining the seal of secrecy of the hospital records inviolate. They are to be read in harmony with the privilege statute rather than in derogation thereof. (*Munzer* v. *State of New York, supra.*)

However, to bring the evidence of a physician within such statutory prohibition, three elements must coincide; (1) the relation of physician and patient must exist; (2) the information must be acquired while attending the patient; and (3) the information must be necessary to enable the physician to act in

that capacity. (*Griffiths* v. *Metropolitan St. Ry. Co.*, 171 N. Y. 106; *People* v. *Austin*, 199 N. Y. 446.) The privilege extends not only to information of a confidential nature, but to all information obtained from the patient while attending in a professional capacity and which is essential to enable the physician to act. (*Renihan* v. *Dennin*, 103 N. Y. 573.) Information derived from the observation of the patient's appearance and symptoms are as much within the statute as if it had been oral and reached the physician's ear. (*Grattan* v. *Metropolitan Life Ins. Co.*, 92 N. Y. 274.) Recordings of privileged communications in hospital records are similarly inadmissible. (*Matter of N. Y. City Council* v. *Goldwater, supra; Thompson* v. *Prudential Ins. Co.*, 266 App. Div. 783.)

But not all of the entries contained in the hospital records, nor the information within the knowledge or possession of the State's physicians are privileged, i.e., facts pertaining to prior escapes and previous assaults. A physician is not prohibited from testifying to such ordinary incidents and facts as are plain to the observation of any one without professional knowledge. Information obtained by the medical directors in a clerical or supervisory capacity, as distinguished from their professional character as physicians, does not come within the ban. (Richardson on Evidence [6th ed.], § 500; *Sparer* v. *Travelers Ins. Co.*, 185 App. Div. 861.) Interrogation designed to elicit whether the party was treated professionally, the names of physicians who treated him, the date of entry in the hospital, and the date of discharge, is proper. (*Lorde* v. *Guardian Life Ins. Co.*, 252 App. Div. 646.)

Section 354 of the Civil Practice Act provides for the waiver of privilege as follows:

"*Application of sections relating to confidential communications.* The last three sections apply to any examination of a person as a witness unless the provisions thereof are expressly waived upon the trial or examination by the person confessing, the patient or the client. But a physician or surgeon or a professional or registered nurse, upon a trial or examination, may disclose any information as to the mental or physical condition of a patient who is deceased, which he acquired in attending such patient professionally, except confidential communications and such facts as would tend to disgrace the memory of the patient, when the provisions of section three hundred and fifty-two have been expressly waived on such trial or examination by the personal representatives of the deceased patient * * *. The waivers herein provided for must be

made in open court, on the trial of the action or proceeding, and a paper executed by a party prior to the trial providing for such waiver shall be insufficient as such a waiver. But the attorneys for the respective parties, prior to the trial, may stipulate for such waiver, and the same shall be sufficient therefor.''

These provisions were never intended to abrogate those of section 352 (*Woernley* v. *Electromatic Typewriters, Inc.*, 271 N. Y. 228). The patient whose medical history is sought herein being incompetent, and now confined to an institution for the criminally insane, privilege cannot be waived at this juncture. In *Weil* v. *Weil* (151 App. Div. 622) the question of who must object to a physician disclosing information acquired in a professional capacity while attending a patient was squarely raised and decided. Justice Scott, speaking for the court, stated at page 623: '' There was evidence given by a physician, but this was clearly incompetent and should not have been received. Section 834 of the Code of Civil Procedure provides that a physician ' shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity.' That is precisely what the physician was allowed to do in the present case. It is of no consequence that the defendant was not present to object to the evidence. The Code does not provide that such evidence may be received if not objected to. The prohibition is absolute that the physician shall not be allowed to testify, and it remains effective unless the provisions are expressly waived on the trial by the patient. (Code Civ. Proc. § 836.) The court should have refused to receive the evidence, and, if it was received inadvertently, should have disregarded it.''

A question arises whether the application for an examination before trial should be denied as to items wherein privilege applies or whether the defense is relegated to objecting at the time the questions are asked. Section 352 contemplates that, in the absence of the required waiver, the confidential information be shut off at its source. (*Lorde* v. *Guardian Life Ins. Co., supra; Woernley* v. *Electromatic Typewriters, Inc., supra; Kriebel* v. *Commercial Travelers Mut. Acc. Assn.*, 63 N. Y. S. 2d 282.) Accordingly, the application is denied as to those matters exclusively coming within the purview of the objection. However, as to those matters wherein some competent testimony and proof may be adduced of the witnesses, the items are allowed subject to the State's objection at the time of questioning.

Item 1 of the notice of motion is granted as to " The history of one William Norton prior to admission to and while at Rockland State Hospital, his escapes prior to October 23, 1945, his prior criminal acts, his abnormal sexual activities and dangerous propensities " and denied as to the balance. Item 2 is granted as to " The notice which the State of New York had of the foregoing " and denied as to the balance. Item 3 is granted except as to " statements made by William Norton following his apprehension ". Item 4 is granted.

The witnesses shall produce the hospital records for the purpose of refreshing their recollection, pursuant to section 296 of the Civil Practice Act, not inconsistent with the foregoing.

That part of the application seeking a discovery and inspection of the records of the County Clerk of Rockland County is denied on the authority of *Dunbar & Sullivan Dredging Co.* v. *State of New York* (174 Misc. 743), *Laitenberger* v. *State of New York* (57 N. Y. S. 2d 418) and *McHugh* v. *State of New York* (Ct. of Claims, M-1130, March 22, 1945). Moreover, this court has no jurisdiction over the County Clerk or his records.

Settle order on notice.