In the Matter of the Probate of the Will of ANNIE GRABAU, Deceased.

Surrogate's Court, Queens County, December 30, 1948.

*S. Romaine Wiley* for Merwin J. Page, proponent.

*Joseph Mafera,* special guardian for Andrew Wein and another.

*Nathaniel L. Goldstein, Attorney-General (Louis E. Cooper* of counsel), for Creedmoor State Hospital.

SAVARESE, S. Testatrix, afflicted with a mental ailment, died at Creedmoor State Hospital on May 26, 1948. An instrument, dated November 10, 1947, has been offered for probate as her

last will and testament. By its terms four nieces and three nephews, her nearest surviving kin, are cut off with $1 each. Except for these nominal bequests and a legacy of $100 to a religious society the residue is left to a grandniece. Objections to probate have been made by a special guardian on behalf of a nephew and a niece, whose existence and whereabouts are stated to be unknown, and their successors in interest. The grounds of his objections are, among others, invalidity of execution, lack of testamentary capacity and the exercise of undue influence and fraud. He now moves to inspect the hospital records relating to the decedent. The application is resisted by the proponent and the Attorney-General.

Section 20 and subdivision 9 of section 34 of the Mental Hygiene Law require that a record be kept of each patient, admitted to an institution within the Department of Mental Hygiene, which shall show, among other matters, his or her personal history, mental state, bodily condition and medical treatment. Both sections expressly provide for access to the records upon an order of a judge of a court of record. Despite the power thus conferred it is, nevertheless, urged that the records are privileged communications under the provisions of the Mental Hygiene Law and section 352 of the Civil Practice Act, and that the special guardian is not within the class of persons mentioned in section 354 of the Civil Practice Act who may waive the provisions of section 352.

The intent and purpose of the statute is to make the records accessible, and then only after the commissioner or a judge of a court of record has passed upon the propriety of the requested inspection. It is apparent from the affidavit of the special guardian that inspection is sought in order to enable him to ascertain information relating to the competency of the testatrix to execute the instrument in controversy. His statements that the testatrix was a patient in the Kings County Hospital in the early part of February, 1948, and was thereafter admitted to the Creedmoor State Hospital about six weeks later are undenied. In view of the short time which elapsed between the date of the instrument and her admission to the mental institution the request of the special guardian impresses me as proper and necessary. In the absence of a contest the Surrogate before admitting a will to probate must be satisfied with the genuineness of the will, the validity of its execution and that the testator, at the time of executing it, was in all respects competent to make a will and not under restraint. (Surrogate's Ct. Act, § 144.) An issue having been created as to the competency of the

testatrix it would seem that information bearing upon the same should not be kept from the contestants or the court and that the special guardian should be afforded an opportunity to make a fair and full inquiry concerning her mental capacity. It is urged, however, that the disclosure authorized by the afore-mentioned provisions of the Mental Hygiene Law is subject to the provisions of sections 352 and 354 of the Civil Practice Act. The former section provides that a physician shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity. Under the provisions of the latter section a physician, upon a trial or an examination, may disclose any information as to the mental or physical condition of a patient who is deceased, which he acquired in attending such patient professionally, except con-fidential communications and such facts as would tend to dis-grace the memory of the patient, when the provisions of section 352 have been expressly waived on such trial or examination by the personal representatives of the deceased patient. Where the validity of the last will and testament of the deceased patient is in question the waiver may be made by the executor or executors named in the will, or the surviving husband, widow, or any heir at law or any of the next of kin, of such deceased, or any other party in interest. The privilege accorded to the communications is dependent upon the existence of the rela-tionship of physician and patient. There are cases which hold that the professional relationship does not exist between the official physicians of a State hospital and its patients. (*Liske* v. *Liske,* 135 N. Y. S. 176; *Munzer* v. *Blaisdell,* 183 Misc. 773, affd. 269 App. Div. 970; *Scolavino* v. *State of New York,* 187 Misc. 253, mod. on other grounds, 271 App. Div. 618, affd. 297 N. Y. 460.) Others declare a contrary rule. (*Matter of Maryland Casualty Co.* 78 N. Y. S. 2d 651; *Westphal* v. *State of New York,* 191 Misc. 688; *Greff* v. *Havens,* 186 Misc. 914.) Even assuming that the relationship exists the Mental Hygiene Law creates an exception to the privilege and permits a disclosure, without consulting the patient, on the consent of the commissioner or upon the order of a court of record. (*Scolavino* v. *State of New York, supra.*) Here the special guardian has a legitimate reason for inspecting the records, and it would seem that, if they contain information bearing upon the competency of the testatrix to make a will, in the interests of justice he should be afforded the opportunity to secure and bring it to the atten-

tion of the court.  A denial of the right to him might result in a substantial prejudice to the rights of the absent kin and in the admission to probate of an instrument which never had a valid inception.  Application granted.  The hospital records should be produced before the Surrogate on January 14, 1949, at 10:00 A. M. when inspection may be had in the presence of all counsel.  Submit order on notice.