In the Matter of HERBERT D. WARRINGTON, As Committee of ELIZABETH WARRINGTON, Respondent. STATE OF NEW YORK, Appellant.

FRANCIS J. MULLIGAN, Public Administrator of New York County, as Administrator of the Estate of GEORGE H. PIERRE, Deceased, Appellant, v. STATE OF NEW YORK, Respondent.

Argued April 4, 1951; decided July 11, 1951.

*Nathaniel L. Goldstein, Attorney-General (Henry S. Manley* and *Wendell P. Brown* of counsel), for State of New York, appellant in first above-entitled proceeding. I. "Waived upon the trial" means that the report cannot be obtained earlier, even by a person competent to waive. (*Matter of Coleman,* 111 N. Y. 220; *Holden* v. *Metropolitan Life Ins. Co.,* 165 N. Y. 13; *Clifford* v. *Denver & R. G. R. R. Co.,* 188 N. Y. 349; *People* v. *Bloom,* 193 N. Y. 1; *Capron* v. *Douglass,* 193 N. Y. 11; *Speck* v. *International Ry. Co.,* 133 App. Div. 802; *Woernley* v. *Electromatic Typewriters, Inc.,* 271 N. Y. 228; *Lorde* v. *Guardian Life*

*Ins. Co.,* 252 App. Div. 646; *Greff* v. *Havens,* 186 Misc. 914; *Westphal* v. *State of New York,* 191 Misc. 688; *Kinbacher* v. *Schneider,* 194 Misc. 969.) II. The order was unauthorized by the Court of Claims Act. (*Di Laura* v. *State of New York,* 275 App. Div. 639; *Thomas* v. *State of New York,* 197 Misc. 288; *Farrell* v. *State of New York,* 276 App. Div. 1051; *Matter of Lee* v. *State of New York,* 183 Misc. 615; *Mulligan* v. *State of New York,* 277 App. Div. 437.)

*Samuel L. Greenberg* and *Erwin Greenberg* for respondent in first above-entitled proceeding. Application made by the committee of incompetent on behalf of said incompetent and in her interest pursuant to subdivision 9 of section 34 of the Mental Hygiene Law is a sufficient waiver of the privilege within the purview of section 354 of the Civil Practice Act. (*Steinberg* v. *New York Life Ins. Co.,* 263 N. Y. 45; *Waldron* v. *State of New York,* 193 Misc. 113; *Zimmer* v. *Third Ave. R. R. Co.,* 36 App. Div. 265; *Trieber* v. *New York & Queens Co. Ry. Co.,* 149 App. Div. 804; *Southard* v. *Rexford,* 6 Cow. 254; *Speck* v. *International Ry. Co.,* 133 App. Div. 802; *Clifford* v. *Denver & R. G. R. R. Co.,* 188 N. Y. 349; *Munzer* v. *Blaisdell,* 183 Misc. 773, 269 App. Div. 970; *Scolavino* v. *State of New York,* 187 Misc. 253, 271 App. Div. 618, 297 N. Y. 460.)

*Hyman H. Smith, Jacob D. Fuchsberg, William Cohen* and *Bernard I. Schérer* for appellant in second above-entitled action. Application by an administrator on behalf of his intestate pursuant to section 20 and subdivision 9 of section 34 of the Mental Hygiene Law is a good and sufficient waiver within the provisions of section 354 of the Civil Practice Act. (*Clifford* v. *Denver & R. G. R. R. Co.,* 188 N. Y. 349; *Matter of Coleman,* 111 N. Y. 220; *Hoyt* v. *Hoyt,* 112 N. Y. 493; *Masterson* v. *Boyce,* 53 Hun 630; *Marx* v. *Manhattan Ry. Co.,* 56 Hun 575; *Fortgang* v. *Alpert,* 256 App. Div. 949; *Matter of Ackerman,* 163 Misc. 624; *Waldron* v. *State of New York,* 195 Misc. 278; *Matter of Grabau,* 193 Misc. 859; *Matter of Failla,* 197 Misc. 673; *Thomas* v. *State of New York,* 197 Misc. 288; *Matter of Lee* v. *State of New York,* 183 Misc. 615.)

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown* and *Henry S. Manley* of counsel), for State of New York,

respondent in second above-entitled action. I. The order of the Court of Claims was erroneous because it might result in disclosing " confidential communications ". II. " Waived upon the trial " means that the report cannot be obtained earlier, even by a person competent to waive. III. The order was unauthorized by the Court of Claims Act.

LEWIS, J. The double title which prefaces this opinion identifies two cases which were argued together. A brief statement of the facts involved will pose the problem each appeal presents — problems similar but not identical.

In *Matter of Warrington* — the petitioner is the committee of an incompetent person who, in September, 1945, while confined as a patient at Kings Park State Hospital fell to the ground below from a fourth-floor doorway in one of the hospital buildings, thereby sustaining injuries alleged to be permanent. To ascertain the circumstances surrounding the incompetent's injury and to determine whether the State or any of its employees were guilty of actionable negligence, the committee applied to the Court of Claims for an order, pursuant to section 20 and section 34, subdivision 9, of the Mental Hygiene Law permitting him to inspect the hospital records relating to her case. The facts sought are referable to the incompetent's physical and mental condition during her stay at the hospital; the care, supervision and surveillance afforded her, and the facts surrounding the occurrence of the accident which caused her injuries. A Judge of the Court of Claims granted the committee's application. Thereafter, upon appeal by the State, the Appellate Division, Third Department, unanimously affirmed that order and granted the State's motion for leave to appeal to this court upon the following certified question: " Is the order from which the appeal was taken one that the Court of Claims was authorized to make?"

In *Mulligan* v. *State of New York* — the petitioner is a public administrator engaged in the administration of the estate of George H. Pierre, deceased, who is alleged to have died as a result of a fall while a patient at Kings Park State Hospital. The public administrator has filed a claim against the State alleging that the fall which caused decedent's death was due to negligence of the State in failing properly

to supervise the decedent. When the public administrator applied to the Court of Claims for an order pursuant to section 20 and section 34, subdivision 9, of the Mental Hygiene Law permitting him to inspect the hospital records of the decedent to enable him properly to prepare and present proof in support of a claim against the State, a Judge of the Court of Claims — as in the *Warrington* case — granted the administrator's application. However, in the *Mulligan* case the Appellate Division, upon appeal by the State, reversed on the law the order of the Court of Claims, and granted leave to appeal to this court upon the following certified question: "Is the order from which the appeal was taken one that the Court of Claims was authorized to make?"

We shall consider first the validity of the order made by a Judge of the Court of Claims in *Matter of Warrington.*

Insofar as it is here material section 20 and section 34, subdivision 9, of the Mental Hygiene Law provide as follows:

"§ 20. RECORD OF PATIENTS AND INMATES. The department of mental hygiene shall keep in its office, and accessible only to the commissioner, medical director and such other officers and subordinates of the department as the commissioner may designate, except by the consent of the commissioner *or an order of a judge of a court of record,* a record of each patient admitted to an institution within the department, and also the records, papers and reports of examinations of others made by any division or bureau of the department. The record of each patient admitted to any institution within the department shall show:

"1. The name, residence, sex, age, nativity, occupation, civil condition and date of admission of every patient in custody in the several institutions for the care and treatment of mentally ill, epileptic and mental defective persons in the state, and the name and residence of the person making the petition for certification, if any, and of the persons signing the medical certificate, and of the judge making the order of certification, if there be a certification.

"2. The date of the discharge of each patient from such institution, whether recovered, much improved, improved or unimproved, and to whose care committed."

" § 34. POWERS AND DUTIES OF DIRECTOR. The director of each state institution in the department shall be its chief executive officer, and in his absence or sickness, the associate director, an assistant director or other officer designated by the director shall perform the duties   *   *   *   of the director.   *   *   * Subject to such powers of the commissioner and such rules, he shall:   *   *   *

" 9. Keep a record, in which he shall cause to be entered at the time of reception of any patient, his name, residence and occupation, and the date of such reception   *   *   *.

" The director within three days after the reception of a patient, shall make, or cause to be made a descriptive record of such case. He shall also make or cause to be made entries from time to time of the mental state, bodily condition and medical treatment of such patient during the time such patient remains under his care, and in the event of the discharge or death of such person, he shall state in such case record the circumstances thereof, and make such other entries at such intervals of time and in such form as may be required by the commissioner. Such record shall be accessible only to the director and such officers and subordinates of the institution as he may designate and to the commissioner and his representatives, except on the consent of the commissioner *or an order of a judge of a court of record.*" (Emphasis supplied.)

We agree with the ruling by the Appellate Division that in the circumstances disclosed by the record before us, the opposition by the State to efforts by the committee to inspect hospital records relating to the incompetent on the ground that the medical history of the incompetent constitutes a communication which is privileged from disclosure to the incompetent's own committee, is without merit. At common law no privilege was attached to physician-patient communications. (See 8 Wigmore on Evidence, pp. 802–803; 1 Greenleaf on Evidence [15th ed.], p. 335ff.) The privilege was first introduced by statute in New York in 1828 (2 Rev. Stat. of N. Y. [1828], p. 406, part III, ch. VII, tit. III, art. 8, § 73) to the end that a patient might disclose details of his ailment to the physician without fear that the physician might be compelled to divulge his knowledge upon some future occasion. (See *Edington* v. *Mutual Life Ins. Co.*, 67 N. Y.

185, 194.) It is clear that the privilege is that of the patient and that — at least to a degree — the State objects to the present application not in the interests of the patient, but to protect itself.

However, it has been held that at the trial any party to the action may object to evidence which comes within the prohibition of the statute, and it remains for the patient to waive the privilege. See *Westover* v. *Aetna Life Ins. Co.* (99 N. Y. 56, 59–60). That principle, however, does not authorize a physician or any agency acting in his behalf — as is the State in the present case — to decline to inform the patient in private conference of steps taken to effect the cure which the physician has undertaken. For this purpose, we are able to conceive of no reason why the committee of an incompetent patient, acting to further the interests of his ward, should be treated in a manner different from the patient himself. We are not here concerned with evidence offered upon a trial or examination. The transaction involved is a private one between a State hospital and the committee of one of its patients. Article 81 of the Civil Practice Act vests in the Supreme Court power relative to the care and custody of incompetent persons, which power must be exercised by means of a committee. (Civ. Prac. Act, §§ 1356–1358.) To prevent such committee from securing information to enable it properly to carry out its function to preserve the rights and interests of the incompetent would, in our view, be a result unwarranted by law.

Moreover, section 20 and section 34, subdivision 9, of the Mental Hygiene Law, quoted above, clearly indicate that hospital records pertaining to an incompetent shall be accessible on " an order of a judge of a court of record." The order of a Judge of the Court of Claims comes within that statutory provision and the State does not assert that there has been an abuse of the discretion vested in the Court of Claims as a court of record. (Judiciary Law, § 2, subd. 5.)

In his brief the Attorney-General argues that the Court of Claims Act does not authorize a discovery or inspection, and that section 34, subdivision 9, of the Mental Hygiene Law was intended to be used primarily for medical purposes, such as where a committee wishes a consulting psychiatrist to have

access to the incompetent's record. It is also suggested that records in a State hospital may be available for purposes of litigation, but that the provisions of the Mental Hygiene Law were not intended to expand the resources of litigation made available under the practice acts and specifically the Court of Claims Act. We find no such limitation in the statute; nor do we find any basis in law or fact for such a limitation. In that connection a decisive fact is that the orders in the *Warrington* and *Mulligan* cases were not made under provisions of the Court of Claims Act but in each instance were made pursuant to section 20 and section 34, subdivision 9, of the Mental Hygiene Law.

Our conclusion is that in the circumstances disclosed by the record in *Matter of Warrington* the order by a Judge of the Court of Claims, acting within the power vested in him as " a judge of a court of record " by section 20 and section 34, subdivision 9, of the Mental Hygiene Law, was a proper exercise of the judicial function.

In *Mulligan* v. *State of New York,* the Appellate Division — contrary to its decision in *Matter of Warrington* — reversed the order which permitted the public administrator to inspect the decedent's hospital record for the purpose of discovering evidence of negligence, if any there was, on the part of the State. In so deciding the theory of the Appellate Division was that, since the patient Pierre — whose estate is here involved — is now dead, a situation is presented unlike that prevailing in *Matter of Warrington* where the following italicized portion of section 354 of the Civil Practice Act must be given effect:

" § 354. APPLICATION OF SECTIONS RELATING TO CONFIDENTIAL COMMUNICATIONS. The last three sections apply to any examination of a person as a witness unless the provisions thereof are expressly waived *upon the trial* or examination *by* the person confessing, *the patient* or the client. *But a physician or surgeon or a professional or registered nurse, upon a trial or examination, may disclose any information as to the mental or physical condition of a patient who is deceased, which he acquired in attending such patient professionally, except confidential communications and such facts as would tend to disgrace the memory of the patient, when the provisions of section three hundred and fifty-two have been expressly waived on such trial or examination*

*by the personal representatives of the deceased patient* \* \* \*.
*But such attorney or his employees, upon a trial or examination,*
*shall not be permitted to disclose any confidential communica-*
*tions which would tend to disgrace the memory of the decedent.*
*The waivers herein provided for must be made in open court,*
*on the trial of the action* or proceeding, and a paper executed
by a party prior to the trial providing for such waiver shall be
insufficient as such a waiver. But the attorneys for the respec-
tive parties, prior to the trial, may stipulate for such waiver,
and the same shall be sufficient therefor.''

The excerpt from section 354, last quoted above, refers solely
to communications had with a decedent. It was, therefore, not
applicable in *Matter of Warrington.*

The provisions of section 352 of the Civil Practice Act to
which reference is made in section 354, quoted (*supra*), are
as follows:

'' § 352. PHYSICIANS, DENTISTS AND NURSES NOT TO DISCLOSE PRO-
FESSIONAL INFORMATION. A person duly authorized to practice
physic or surgery, or dentistry, or a professional or registered
nurse, shall not be allowed to disclose any information which he
acquired in attending a patient in a professional capacity, and
which was necessary to enable him to act in that capacity,
\* \* \* unless, where the patient is a child under the age of
sixteen, the information so acquired indicates that the patient
has been the victim or subject of a crime, in which case the
physician, dentist or nurses may be required to testify fully in
relation thereto upon any examination, trial or other proceeding
in which the commission of such crime is a subject of inquiry.''

It is the State's position in the *Mulligan* case that the State
hospital records which the claimant seeks to examine are privi-
leged and that the privilege can only be waived by the personal
representative of the decedent on the trial of any claim. In
support of that position the Attorney-General argues that the
provisions of section 20 and section 34, subdivision 9, of the
Mental Hygiene Law, quoted (*supra*) — each of which statutes,
as we have seen, makes the record of an inmate of a State hos-
pital accessible upon '' an order of a judge of a court of record ''
— must be read with sections 354 and 352 of the Civil Practice
Act. (Quoted *supra.*)

We cannot agree with that argument which, reinforced by reference to our decision in *Matter of City Council of City of N. Y.* v. *Goldwater* (284 N. Y. 296), appears to have convinced the Appellate Division. We do not think the rule of the *Goldwater* case bears upon our present problem. That case arose in the course of a councilmanic investigation designed to examine into charges of negligence and maladministration in the treatment of patients at Lincoln Hospital in the city of New York. The problem there presented arose when investigators sought by subpœna duces tecum to examine records of Lincoln Hospital including case records of certain patients. Unlike the two cases now before us, no order was sought in the *Goldwater* case under section 20 and section 34, subdivision 9, of the Mental Hygiene Law. Indeed at the end of his prevailing opinion Chief Judge LEHMAN was careful to state (p. 302): '' We now hold that the statutory privilege may be asserted whenever the power of a court is invoked *in manner authorized by the provisions of article 33 of the Civil Practice Act* to compel a witness to disclose information which under other provisions *of the same article* he is forbidden to disclose.'' (Emphasis supplied.) The rule of the *Goldwater* case is overextended when its application is given effect in cases like the two at hand, neither of which falls within the provisions of article 33 of the Civil Practice Act but on the contrary involve in each instance an application to a judge of a court of record for an order which, when granted, contained the recital that it was done '' pursuant to sections 20 and 34, subdivision 9, of the Mental Hygiene Law ''.

If, in the *Mulligan* case, we affirm the Appellate Division order of reversal — which in effect denied the administrator's application for an order of the Court of Claims permitting an examination of a State hospital's record — we would thereby disregard two statutes (Mental Hygiene Law, §§ 20, 34, subd. 9) which had their origin at least fifty-five years ago (L. 1896, ch. 545, § 13) and which the Legislature has since seen fit to carry into the Mental Hygiene Law, making State hospital records accessible upon '' an order of a judge of a court of record ''. (See L. 1927, ch. 426, § 20; L. 1946, ch. 472.) If the Legislature had since been disposed to require in some circumstances that section 20 and section 34, subdivision 9, of the Mental Hy-

giene Law be read with sections 352 and 354 of the Civil Practice Act, it would have been a simple matter to have enacted legislation to accomplish that end. Having failed to point out any such legislation we think the order of the Appellate Division in the *Mulligan* case was error.

The position taken by the State in both *Matter of Warrington* and the *Mulligan* case would, in our opinion, unjustly hamper well-intentioned efforts made in behalf of an incompetent patient injured in a State hospital, to ascertain from hospital records the facts, if any, by which actionable fault of State agents may be proved. Upon that subject legislative history makes it clear that since 1896 the Legislature has been quite willing to leave to the discretion of " a judge of a court of record " the inquiry whether the end to be achieved in a given case justifies the means afforded by the provisions of the Mental Hygiene Law cited above.

In *Matter of Warrington (State of New York)*, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

In *Mulligan v. State of New York,* the order of the Appellate Division should be reversed, and that of the Court of Claims affirmed, with costs in this court and in the Appellate Division, and the certified question answered in the affirmative.

LOUGHRAN, Ch. J., CONWAY, DESMOND, DYE, FULD and FROESSEL, JJ., concur.

In *Matter of Warrington (State of New York)* : Order affirmed, etc.

In *Mulligan v. State of New York:* Ordered accordingly.