**In re ALBERT LINDLEY LEE ME-
MORIAL HOSPITAL.**

United States District Court
N. D. New York.

Argued Feb. 16, 1953.

Submitted Feb. 21, 1953.

Decided Feb. 25, 1953.

Edmund Port, U. S. Atty., Syracuse, N. Y., T. Joseph Coffey, Auburn, N. Y., of counsel, for plaintiff.

Homer T. Jennings, Fulton, N. Y., for Albert Lindley Lee Memorial Hospital.

W. Marcus Crahan, Fulton, N. Y., for Dr. Anthony J. Cincotta, intervenor.

BRENNAN, Chief Judge.

The sole question raised on these motions is the determination as to whether or not the Albert Lindley Memorial Hospital, hereinafter referred to as "hospital", may refuse to disclose the names and addresses of the patients of Doctor Anthony J. Cincotta admitted to the hospital during the years 1946 to 1950, inclusive the basis of such refusal being the provisions of Section 352 of the New York State Civil Practice Act which prohibits the disclosure by a doctor of information acquired in attending a patient in a professional capacity.

The procedural and factual background is briefly stated. On November 5, 1952, the Commissioner of Internal Revenue issued its summons directed to the hospital to appear before Special Agent Fitzgerald at a given time and place to give testimony in the matter of the tax liability of Doctor Anthony J. Cincotta. The summons required the production of books, papers and records, and specifically required the records of "the names and addresses of Dr. Cincotta's patients admitted to your institution on his instructions during the years 1946 to 1950 inclusive." There was typed on the bottom of the summons a sentence as follows: "Appearance is waived if the agent is permitted to examine the records or if the desired information or data is submitted by your institution." It appears that the administrator of the hospital refused to comply with the summons and to permit the examination. The information or data was not submitted. Upon such showing an ex parte order was issued by this court on January 23, 1953, requiring that the hospital permit the examination of its records by an agent of the Internal Revenue Bureau in order to obtain the names and addresses of the patients of Dr. Cincotta, who were confined in the hospital from the years 1946 to 1950, inclusive. The representatives of the hospital and Dr. Cincotta appeared before the undersigned and expressed their uncertainty as to whether the voluntary production of the information desired would be in violation of Section 352 of the New York State Civil Practice Act. The doctor was allowed to intervene, and show cause orders were granted both to the doctor and to the hospital requiring the United States Treasury Department, Office of Director of Internal Revenue of the 21st District of New York, to show cause why the order of this court, dated Jan. 23, 1953 and referred to above, should not be vacated, upon the ground that compliance with the said order would constitute the divulging of privileged and confidential communications by the hospital.

The moving papers appear to be content with the claim that the hospital records are confidential and that the names and addresses of the patients, and the fact that Dr. Cincotta was their attending physician, are within the prohibition of Section 352 of the New York State Civil Practice Act. There is no direct statement that the examination of the records to obtain the information desired would necessarily disclose the

nature of the patient's illness or treatment. Oral argument, however, indicated such to be a fact.

■■ Several points of controversy have been eliminated. The procedure adopted here is unchallenged, and it seems to be approved by the provisions of 26 U.S.C.A. § 3633, and in In re Wolrich, D.C., 84 F.Supp. 481. Upon the question of privileged communications the federal court follows the law of the state of the forum, Munzer v. Swedish American Line, D.C., 35 F.Supp. 493, at page 496. Therefore, the statutory and judicial decisions of the State of New York control. The prohibition or privilege of Section 352 of the New York State Civil Practice Act applies to hospital records. New York City Council v. Goldwater, 284 N.Y. 296, at page 299, 31 N.E.2d 31, 133 A.L.R. 728. No question is raised but that the statutory privilege may be asserted as a rule of evidence here, since the power of this court is invoked to compel a witness to disclose information. New York City Council v. Goldwater, supra, and Section 354 of the New York State Civil Practice Act. No claim is made that the statutory privilege has been waived in any manner by those for whom the protection is provided.

With the above areas of controversy eliminated, only the concise legal question remains; namely, Does the furnishing of the names and addresses of Dr. Cincotta's patients for the years 1946 to 1950, inclusive, by the hospital from or by its records infringe upon the prohibition or privilege provided in the statute above referred to?

■ The history of the statutory privilege is disclosed in New York cases and need not be repeated in detail. At common law a doctor might be compelled to testify as to information acquired in the professional treatment of his patient. Section 352 of the New York State Civil Practice Act is the successor of statutory enactments which have been in existence for over one hundred years, and which have been construed and ap-

plied in many reported cases as prohibiting such disclosure. The nature of the privilege has never been extended to prohibit the disclosure of evidence as to facts not acquired in a professional capacity. Incidents and facts which are plain to the observation of anyone are not within the prohibition. Klein v. Prudential Ins. Co., 221 N.Y. 449, at page 453, 117 N.E. 942. Neither are the voluntary acts or disclosures made or done in the presence of a person not a member of the professions named in the statute. People ex rel. Mooney v. Sheriff, 269 N.Y. 291, at page 294, 199 N.E. 415, 102 A.L.R. 769. The purpose of the statute is to protect the patient in his relationship with the physician and to prevent the disclosing of information which might result in humiliation, embarrassment or disgrace. Steinberg v. New York Life Ins. Co., 263 N.Y. 45, at page 48, 188 N.E. 152, 90 A.L.R. 642.

■ Having in mind the limited scope of the information required under the order, an examination of New York precedents has been made which dictate the decision here. These precedents all lead to the conclusion that the information requested is not privileged, and that the motions to vacate the order must be denied. Brief reference to some of the reported cases will be made.

Klein v. Prudential Ins. Co., supra, holds that a physician may testify that he attended a patient and that he, the patient, was then sick. The case of Patten v. United Life and Accident Ins. Association, 133 N.Y. 450, 31 N.E. 342, is cited as holding that the section does not prohibit the showing that a person was a patient of a doctor; that the doctor attended him as a patient; and that he was sick. The doctor may testify that he was called to attend the patient professionally and may tell the number of times he attended him.

In Lorde v. Guardian Life Ins. Co., 252 App.Div. 646, 300 N.Y.S. 721, the court cited the Klein and Patten cases and held that interrogatories submitted to a hospital, which were designed to elicit whether a person was treated pro-

fessionally, the names of the physicians who treated him, the date of his entry into the hospital, and the date of his discharge, are proper. This case is cited and apparently followed in Westphal v. State of New York, 191 Misc. 688, 79 N.Y.S.2d 634. The same may be said as to McGrath v. State of New York, 200 Misc. 165, 104 N.Y.S.2d 882, and Vilardi v. Vilardi, 200 Misc. 1043, 107 N.Y.S.2d 342.

■ Sparer v. Travelers' Ins. Co., 185 App.Div. 861, at page 865, 173 N.Y. S. 673, also cites the Klein and Patten cases and makes the very pertinent argument that the information sought here is in fact necessary to lay a foundation for the objection that the information is privileged. In other words, the patient-physician relationship must be shown before the privilege may be invoked.

■ In applying the holdings in the above cases there is certainly no reason for applying the privilege more liberally when the information is sought from a hospital than when it is sought from the doctor. One of the four essentials for the establishment of the privilege is that the injury resulting from disclosure must be greater than the benefit disclosure would afford in disposing of litigation correctly. Scolavino v. State of New York, 187 Misc. 253, at page 257, 62 N.Y.S.2d 17. The public has a definite interest in the just enforcement of taxing statutes. It follows that the benefits which may be afforded by the disclosure in determining litigation outweighs any hypothetical injury.

The moving parties cite no cases which may be considered as containing a contrary holding, but it is urged that the above authorities all involve actual litigation, while here the proceeding is in the nature of an investigation. By citing the case of In re New York City Council v. Goldwater, supra, they urge that Section 352 is available to the hospital in this proceeding. Having taken such a position, it is difficult to understand why the section should be construed and applied in an "investigation" in a manner other than in actual litigation. The moving parties also urge that the prohibition applying to attorneys under the provisions of Section 353 of the New York State Civil Practice Act are analogous here, and that in the cases of Matter of Shawmut Mining Co., 94 App.Div. 156, 87 N.Y.S. 1059 and Neugass v. Terminal Cab Corp., 139 Misc. 699, 249 N.Y.S. 631, it was held to be improper to require an attorney to disclose the names of his clients. Such holdings arose by reason of special circumstances. The general rule is that the power to direct the disclosure of the client's residence or address has long been recognized and is still the law. Falkenhainer v. Falkenhainer, 198 Misc. 29, 97 N.Y.S.2d 467.

The earnestness of the moving parties in presenting their contentions prompts the court to make additional observations. This court can not understand how a person is injured by the disclosure of the fact that he has received the services and care of a hospital, and has been attended by a certain physician. These are every day incidents of life occurring openly and with notoriety. The patient does not secrete his entry into the hospital; neither does the doctor mask his identity when entering the home or the room of his patient. Any injury to the patient is hypothetical rather than actual.

Inasmuch as there is no positive evidence here that the books and records of the hospital can not be inspected to obtain the information authorized without the disclosure of information which may properly be termed confidential, the motions will be denied. The hospital, however, is to take all precautions necessary to insure that the treatment afforded any patient or the diagnosis of his illness shall not be disclosed. If further instruction as to the procedure to be followed is desired of this Court by any party, application may be made therefor.

It is ordered that the motions be and the same are hereby denied.