CYNTHIA B. et al., Respondents, v NEW ROCHELLE HOSPITAL MEDICAL CENTER et al., Defendants, and MARY M. CURTIS et al., Appellants. NEW YORK HOSPITAL, Respondent.

Second Department, May 3, 1982

APPEARANCES OF COUNSEL

*DeVito & Eberz* (*John J. Pilkington* of counsel), for Mary Curtis and another, appellants.

*Fuchsberg & Fuchsberg* (*Norman E. Frowley* of counsel), for respondents.

*Kelly Drye & Warren* (*Susan H. Rockford, Richard J. Concannon* and *Robert A. Horowitz* of counsel), for New York Hospital, respondent.

OPINION OF THE COURT

GIBBONS, J. P.

The appeals present for resolution the somewhat unusual question of whether, in a medical malpractice action

in which the plaintiff alleges that the defendant had aggravated a pre-existing mental disorder, a nonparty private hospital may, despite plaintiff's authorization and waiver of her physician-patient privilege, properly resist the release of her psychiatric hospital records for discovery and inspection.

This action against the New Rochelle Hospital Medical Center and three physicians was commenced in or about July of 1979 by the plaintiff, Cynthia B., and her husband, Stephen B., who seeks reimbursement of medical expenses and damages for loss of consortium.

Cynthia B. (plaintiff) was hospitalized in defendant New Rochelle Hospital Medical Center for a period of time between July and September, 1977. At some point during this interval, plaintiff sustained physical injuries, particularly several fractures, when she allegedly attempted suicide by jumping from a window of the hospital.

From August until September of the following year, 1978, plaintiff was confined at the New York Hospital — Cornell Medical Center, Westchester Division. This was a voluntary admission for alcohol detoxification and rehabilitation; plaintiff received psychiatric treatment and was discharged on September 29, 1978 as improved.

In amplification of their allegations of malpractice, plaintiffs, in their bills of particulars, claim, *inter alia,* that the defendants were negligent "in failing to take proper precautions with a suicidal patient; in failing to recognize and treat a psychiatric emergency; in improperly treating a psychiatric emergency; [and in] failing to treat [an] underlying psychiatric condition".

In September of 1979, defendant New Rochelle Hospital Medical Center demanded that plaintiffs execute authorizations for the release of hospital and medical records. In June of 1980, defendants Curtis and Cea sought similar authorizations, "including but not limited to Nassau County Medical Center and the New York Hospital." Such authorization, with respect to the New York Hospital records here at issue, was, in fact, given by Cynthia B. on

June 28, 1980. However, a demand for these records was refused by the New York Hospital despite plaintiff's authorization. In a letter dated September 24, 1980, the attorney for the New York Hospital stated: "It is the policy of the Hospital not to permit the disclosure of psychiatric records even upon the authorization of patients or former patients."

Thereafter, by notice of motion dated November 10, 1980, defendants Curtis and Cea moved to compel disclosure of the New York Hospital psychiatric records of plaintiff Cynthia B. pursuant to CPLR 3101, 3102 (subd [c]), and 3121 (subd [a]), and section 33.13 of the Mental Hygiene Law. These defendants alleged that the records were properly discoverable as plaintiffs had put Cynthia's mental condition in issue by their claims that a pre-existing mental infirmity had been aggravated by the malpractice. Codefendants New Rochelle Hospital Medical Center and McBaine cross-moved for similar relief and plaintiffs also sought to be supplied with the records which they themselves had not seen.

New York Hospital submitted a physician's affirmation in opposition to defendants' motions, detailing its policy for denial of access to such records. The physician asserted that the release of such sensitive psychiatric material would tend to undermine the therapeutic atmosphere of confidentiality essential to effective therapy, and could have serious detrimental effects upon plaintiff's mental health and well-being. Relying on *Gotkin v Miller* (379 F Supp 859 [EDNY], affd 514 F2d 125 [CA2d]), which construed former section 15.13 of the Mental Hygiene Law (the predecessor of present § 33.13), New York Hospital contended that, under its holding, a patient does not have an absolute right to direct access to the hospital records of his own psychiatric treatment and that the fact that plaintiff may have waived the physician-patient privilege with respect to such records does not *alone* justify ordering the New York Hospital to disclose the records to anyone she designates.

New York Hospital requested that disclosure be made, if at all, with "adequate safeguards" to protect against the dangers cited. An attorney's affirmation submitted on behalf of New York Hospital also requested that the court or a psychiatrist supervise the disclosure, if any. The attorneys for plaintiffs then submitted an affirmation in which they again requested production of the records, but stated that they had no objection to the supervised disclosure suggested by the hospital.

In response to defendants' motion and cross motion, the court, in an order dated January 20, 1981, appointed MORTON B. SILBERMAN as referee, directed New York Hospital to turn over its records to him, and directed the referee to review the records and turn over to the attorneys for all parties whatever portions he deemed necessary and appropriate.

By a decision dated February 3, 1981, the referee determined that "the psychiatric treatment rendered * * * plaintiff in August and September 1978 has the barest minimal relevance to the issues of the underlying action. The minimal relevance is far outweighed by the prejudice that could result to the plaintiff and members of her family by permitting discovery of this hospital record." By order dated March 27, 1981, the court, on its own motion, confirmed the determination of the referee and denied the defendants' motion and cross motion.

Defendants Curtis and Cea appeal from the aforesaid order appointing the referee, the referee's decision of February 3, 1981, and the second order, *inter alia*, confirming his determination.

We have examined the record of the New York Hospital made in the regular course of plaintiff's psychiatric treatment in that facility between August 11 and September 29, 1978, and contrary to the findings of the referee, as confirmed by the order of Special Term, we find that, although some of the material is of a sensitive and delicate nature, it does contain matter which is clearly material and relevant to the issues to be tried in the instant litigation and, therefore, the proper subject for discovery and inspection. (A reference to the incident in which the plaintiff is alleged

to have sustained personal injuries when she fell from a window of the New Rochelle Hospital Medical Center is contained in the "Therapeutic Notes" of her treatment in the subject records of the New York Hospital.)

We turn next to the question of whether the New York Hospital may properly refuse to release the plaintiff's psychiatric records notwithstanding her waiving her physician-patient privilege and her authorizing their disclosure. We do not now pass on whether the New York Hospital is an "Alcoholism facility" operated by the State, or one "which has been approved * * * as suitable for the care and treatment of persons suffering from alcoholism and which has been issued an operating certificate" (see Mental Hygiene Law, § 1.03, subd 17), but, assume, *arguendo,* that it is such a facility and that disclosure of its clinical records is governed by section 33.13 of the Mental Hygiene Law, which provides the several limited circumstances under which such records may be released. Discovery of such records may be had, *inter alia,* "pursuant to an order of a court of record" and, as stated in *Matter of Civil Serv. Employees Assn. (Director, Manhattan Psychiatric Center)* (72 AD2d 526), "[t]he confidentiality accorded the hospital records of mental patients by the Mental Hygiene Law is not absolute. In a proper case, it must yield to the needs of justice *(Matter of Camacho v Iafrate,* 66 AD2d 799)." (See, also, *Matter of Warrington [State of New York],* 303 NY 129, 140.)

As distinguished from the purpose of the request in *Gotkin v Miller* (514 F2d 125, 127, *supra),* where the hospital record was demanded because "the Gotkins contracted to write a book about Janet's experiences [and wanted] * * * to verify her recollections of various incidents," the hospital records in the instant matter are relevant and material to the pending litigation.

The underlying rationale which requires reversal is that the plaintiff, having placed her mental condition in issue in this action, has effectively waived any claim to her physician-patient privilege with respect to the instant psychiatric hospital records. (See *Prink v Rockefeller Center,* 48 NY2d 309; *Koump v Smith,* 25 NY2d 287; *Goldstein v Kamen,* 73 AD2d 685; *Dale v Sherman,* 75 AD2d 612.)

We perceive of no valid reason, under the facts and circumstances of this case, why the voluntary waiver of plaintiff's physician-patient privilege and her authorization for the release of her hospital records should be frustrated by the refusal of the New York Hospital, a nonparty, to forward her records for discovery and inspection. To permit such result would be to deprive defendants of their right to defend the action and, at the same time, jeopardize plaintiff's right to freely prosecute her cause of action by subjecting her, under the sanctions provided for under 22 NYCRR 672.8, to an order precluding her from presenting medical evidence in support of her claim of psychiatric injury by the testimony of the physician who treated her at the New York Hospital.

The ultimate responsibility for any inconvenience or embarrassment resulting from the revelation of her hospital records is with plaintiffs, and it is for her alone to balance any distressing consequences of such disclosure upon her personal sensibilities against what the effect of noncompliance with the rules will have upon the outcome of her lawsuit. The New York Hospital may not, under the circumstances, interfere with the plaintiff's choice of action or voluntary waiver of her physician-patient privilege. Here, since we find that the hospital records are relevant and material, they must be unconditionally disclosed. (See *Dale v Sherman, supra.*)

Accordingly, the order of March 27, 1981, confirming the referee's determination and denying the appellants' motion should be reversed insofar as appealed from, and the motion granted.

The order of January 20, 1981, by which the court appointed a referee to review the record and determine what portions, if any, were to be disclosed, represented a proper exercise of discretion, pursuant to CPLR 3104, and should therefore be affirmed insofar as appealed from.

The appeal from the referee's decision should be dismissed, inasmuch as no appeal lies from a decision.

WEINSTEIN, BRACKEN and BOYERS, JJ., concur.

Order of the Supreme Court, Westchester County, dated January 20, 1981, affirmed insofar as appealed from, without costs or disbursements.

Appeal from a decision of a referee, dated February 3, 1981, dismissed, without costs or disbursements.

Order of the same court, dated March 27, 1981, reversed insofar as appealed from, and motion for discovery granted. New York Hospital's time to furnish copies of plaintiff Cynthia B.'s records is extended until 20 days after service upon it of a copy of the order to be made hereon, with notice of entry.